### BECK ET AL. *v.* INDIANAPOLIS LIGHT & POWER COMPANY.

[No. 5,698. Filed November 28, 1905.]

1. CONTRACTS.—*Breach.*—*Liquidated Damages.*—A contract by defendant to take enough electric current from an electric light company to make a monthly bill of $1, or pay such amount if so much should not be taken, is not an agreement for liquidated damages in case of a breach of such contract.  p. 605.

2. SAME.—*Breach.*—*Injunction.*—*Negative Covenants.*—*Specific Performance.*—Where defendant contracted with plaintiff for electric current and agreed not to use any electricity except plaintiff's for five years, an injunction to prevent a breach of such covenant not to take from another may be granted, although the courts can not decree specific performance of the contract.  p. 606.

3. SAME.—*Breach.*—*Injunction.*—*Adequate Legal Remedy.*—Where defendant contracted, in consideration of a reduced price, to take from plaintiff electric light company all the current he needed for five years and not to take any current for such period from others, and it is shown that he uses a large amount which from time to time varies greatly, and that no one but defendant can tell how much he would use; that plaintiff's profits thereon could not be ascertained; that it would be impracticable, if not impossible, to keep a system of accounts to show such profits; that the cost of producing and delivering such current can not be ascertained; that, by reason of such contract and other like ones, plaintiff has, at great expense, enlarged its plant so as to be able to furnish such current, and that the surplus current refused by defendant may not be salable to others, plaintiff has no adequate remedy at law for such refusal by defendant to take such electricity.  p. 609.

Beck *v.* Indianapolis, etc., Power Co.—36 Ind. App. 600.

4. CONTRACTS.—*Enforcement.*—*Injunction.*—*Negative Covenants.* —*Appeal and Error.*—A contract, not contrary to public policy, fairly made, ought to be enforced by the courts; and where the trial court in the exercise of a sound discretion has enjoined the breach of a negative covenant in such a contract, thereby doing substantial justice, the Appellate Court will not set aside such decree.  p. 616.

From Superior Court of Marion County (66,043) ; *Vinson Carter,* Judge.

Suit by the Indianapolis Light & Power Company against William Beck and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Means & Buenting,* for appellant Beck.

*John E. Scott* and *Elmer E. Scott,* for appellee.

COMSTOCK, J.—The averments of the complaint show that appellee, Indianapolis Light & Power Company, and appellant Merchants Heat & Light Company are corporations under the laws of Indiana, and severally engaged in the manufacture and production of electric current, and the distribution and sale of such currents for light, power and other purposes, in the city of Indianapolis, and are competitors in said business; that in August, 1902, appellee and appellant Beck entered into a contract, in writing, by the terms of which appellee was to supply Beck, in the manner set forth in the contract, with electric current, upon the terms described in the contract, at a certain special price, to wit, seventy-five cents per ten thousand watts, measured by watt meter, for a period of sixty months, said Beck agreeing to use, during said period, enough current, measured by watt meter, to make a monthly bill of $1, or to pay that sum should sufficient current to make a bill of that amount not be used for the service monthly, and that no electricity for light, heat or power, other than that covered by the contract, should be used upon said premises without the written consent of the appellee; that immediately after the execution of said contract, appellee's

service-wires were conducted into and upon appellant Beck's said premises and were connected with his wires and appliances for the distribution of current on said premises to points of consumption, and proper meters of appellee were then placed and connected for recording and measuring the current, etc., and appellee began to furnish electric current under and pursuant to said contract, and continued to do so until prevented by the wrongful acts of said Beck, and performed and continued to perform all the stipulations, terms and conditions of said contract, and was at all times, and still is, able, ready and willing and offering to perform, for the remaining portion of the period of the contract, as more fully set forth, all its stipulations, terms and conditions.

It is alleged that on October 9, 1903, Beck notified appellee that he would discontinue to receive current from appellee, would disconnect the service-wires, and would connect the service-wires of said Merchants Heat & Light Company with his own wires on said premises, and would thereafter receive electric current on his premises from said last-mentioned corporation; that upon the same day said Beck did disconnect appellee's service-wires and connect the service-wires of said other corporation, so that appellee could not deliver the electric current, etc.; that since said time said Beck has not received, and has refused to receive, electric current from appellee, and has received and accepted, and has threatened and is threatening to continue to receive, electric current from said other corporation, all of which is done and is being done without the written consent of appellee, and contrary to the express provisions of said contract. Appellee avers further that, if said appellant Beck is permitted to do and to continue to do the above-threatened and wrongful acts, great and irreparable injury will result therefrom to the appellee, and that the damages which will be sustained by the appellee, by reason of said wrongful acts and breach of contract, can not now

or at any future period be accurately or even approximately measured, and an action for damages for a breach of said contract would not afford an adequate and complete remedy, because of the following facts:

(1) Appellant Beck uses a large amount of current. The amount used by him varies from hour to hour, day to day, month to month and year to year. The amount of current which would be used by the defendant during the remainder of this period could not be ascertained by the appellee, except by the statement of others. The wrongful disconnecting of the appellee's service-wires, as aforesaid, if permitted, would render it absolutely necessary for the appellee to ascertain the quantity of current required or used on said premises from appellant Beck himself, by proceedings in the nature of discovery and accounting, but appellee in such proceedings would be compelled to rely upon the statements, accounts, measurements and records kept by said appellant, and upon the readings and meter measurements made and kept by said appellant competing corporation, and would be compelled to rely upon the appellants' keeping and preserving, for the full period of said remaining contract term, full, true and accurate account of the measurements of the quantity of current used, and holding the same available for the use of the appellee, when needed for the purpose of proof.

(2) Even if the quantity of current which would be required and used by appellant Beck could be ascertained, the profit appellee would make in selling the same to appellant could not be ascertained, and any effort to show the same in a judicial proceeding would be "exceedingly complicated, burdensome, expensive and inconvenient, and attended with great uncertainty as to correctness of results."

(3) The appellee does not keep and believes and avers that it would be impracticable and impossible to keep any system of accounts by which the cost to appellant Beck or the net profit to the appellee, at a fixed price upon an as-

certained or determined quantity of electric current delivered by it to appellant Beck, or which should be so delivered during the period of one or more years, could be ascertained or determined.

(4) Because the cost of producing and delivering current during a specific period could not be ascertained, as this would require a balancing of defendant company's accounts, with reference to that particular period.

(5) Because the contract entered into with appellant Beck is one of about two hundred long-time contracts of similar character heretofore entered into by and between the appellee and certain of its large consumers of electric current in the central business district of said city, and, in consideration of these contracts and to carry out their terms, this appellee has made large additional investments in machinery and other equipments necessary to carry on its business.

(6) Electric current is a product of peculiar nature, which can not be sold in said city or on any market at a fixed and common market price, such as wheat, corn, etc., the price of said electric current is fixed from time to time by contract with consumers. The electric current which said appellant Beck has so contracted to receive from the appellee, and for the furnishing of which the appellee has so invested its capital, and which said appellant Beck is now refusing and threatening not to receive, appellee may not be able to sell to others during the period of said contract, and if it should offer to sell the same for the same or greater rate than that fixed in said contract, such sale would probably not indemnify the appellee in its damages for the threatened breach of said contract.

The prayer is for injunction to prevent appellant Beck from using, on the premises mentioned in the contract, electricity for light, heat or power other than is furnished by appellee. To this complaint appellant Beck filed a demurrer for want of facts. The demurrer was overruled,

and judgment entered on the demurrer, enjoining appellant Beck as prayed for in the complaint, and for costs.

The only error assigned questions the sufficiency of the complaint to state a cause of action. It is contended: (1) That the complaint shows that appellee has an adequate remedy at law in an action for damages, and in such a case the injunction will not lie; (2) that an injunction will not be granted merely because the damages are uncertain; (3) the contract is not such a one that a court of equity can compel its specific performance, and for that reason it can not enforce its terms by injunction; (4) the contract provides for liquidated damages, and an injunction will not lie to prevent the violation of it. We will consider these claims in their inverse order.

Does the contract provide for liquidated damages? The contract contains the following stipulation: "The undersigned applicant hereby agrees to use enough current, in case same is to be measured by the watt, to make a monthly bill of $1, or pay that amount should sufficient current be not used." This stipulation is a part of the direct obligation of the contract, and can not be properly construed to be an agreement to pay damages for the breach thereof. In *Johnston* v. *Cowan* (1868), 59 Pa. St. 275, Cowan, by writing, granted to Johnston and others, as partners, the privilege of taking clay from his ground for twenty years at twelve cents per ton, to pay $150 at the end of every six months, although they should not have then taken away so much clay as would amount to that sum. Held, that the writing was an agreement to pay for the privilege of taking clay, whether exercised or not, and that it was improper to call the fixed sums to be paid in the event of the minimum of clay not being taken liquidated damages. "It is an alternative price to be paid in an event which it was foreseen might happen, not as damages, but in payment for the privilege. * * * We hold that the contract was not a mere license, but the grant

of the right or privilege, which the parties were bound to pay for, whether they enjoyed it or not. This was their contract, and they must abide by it."

Parties may, by agreement, fix upon a certain sum as liquidated damages, but where the sum is so fixed it must appear, either from the intent of the parties as expressed in the entire instrument, or from expressed words, that the sum was fixed as liquidated damages. The law ordinarily regards a general sum stated in a bond as a penalty, and will allow only a recovery of the damages actually sustained. *Dill* v. *Lawrence* (1887), 109 Ind. 564; *Muhlenberg* v. *Henning* (1887), 116 Pa. St. 138, 9 Atl. 144; *Jaqua* v. *Headington* (1888), 114 Ind. 309.

The contract is not such a one that a court of equity can compel its specific performance, and for that reason it can not enforce its terms by injunction. In *Xenia Real Estate Co.* v. *Macy* (1897), 147 Ind. 568, 574, the court say: "To the doctrine that an injunction will not be allowed when the contract is not capable of enforcement by specific performance there are exceptions. *Singer Mfg. Co.* v. *Union Buttonhole, etc., Co.* [1873], Holmes [U. S.] 253, 6 Fish. Pat. Cas. 480; *Chicago, etc., R. Co.* v. *New York, etc., R. Co.* [1885], 24 Fed. 516; *People, ex rel.,* v. *Manhattan Gas Light Co.* [1865], 45 Barb. 136; *Dietrichsen* v. *Cabburn* [1846], 2 Ph. [22 Eng. Ch.] 52; *Hooper* v. *Brodrick* [1840], 11 Sim. [34 Eng. Ch.] 47; 2 High, Injunctions [3d ed.], §1109, p. 862; Fetter, Equity, p. 269, note 21, §189, pp. 294, 295, and cases cited in notes 22, 23; 2 Beach, Eq. Jurisp., §767, and cases cited." The case from which we have just quoted was one in which injunction was granted to prevent appellants from disconnecting appellee's electric light plant from a natural gas-well, which, under the contract between the parties, was to furnish the supply of natural gas for the operation of the electric light plant, in which it was contended, as in the case at bar, that the contract was one

which a court of equity could not enforce in a proceeding for specific performance, and for that reason it could not enforce its terms by injunction. In *Standard Fashion Co.* v. *Siegel-Cooper Co.* (1898), 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. 749, the court say: "The complaint for specific performance, which sets forth a lawful contract between the parties, capable of performance by both, with no reason for nonperformance by either, readiness to perform on one side, a refusal to perform on the other, and facts showing no adequate remedy at law, is not demurrable on the ground that it does not state a cause of action, merely because it discloses a case which would justify a refusal by the court, in its sound discretion, to exercise its jurisdiction to grant specific performance, for the reason that the nature of the subject-matter is so complicated as to require a multiplicity of orders by the court in its efforts to superintend the details of an extensive and peculiar business. Where a complaint stating a cause of action for specific performance of a contract for business dealings between the plaintiff and the principal defendant, calling for varied and continuous acts, also seeks an injunction to restrain the breach of a negative and severable covenant through the transaction of the business by the principal defendant with a competitor of the plaintiff, joined as a defendant and alleged to be knowingly promoting the breach, the case may properly be retained by the court as one permitting the exercise of the discretionary power of injunction, although specific performance of the affirmative provisions of the contract would probably be impracticable through the difficulty of its enforcement." Affirmed in *Standard Fashion Co.* v. *Siegel-Cooper Co.* (1898), 30 Hun, App. Div., 504.

In *Singer Mfg. Co.* v. *Union Buttonhole, etc., Co.* (1873), Holmes (U. S.) 253, Fed. Cas. No. 12,904, the English and American authorities are considered. There was a contract that the complainant was to be the sole and

exclusive agent for the sale of machines made by the defendant company, and the defendant company was to furnish complainant with machines as called for up to the full capacity of the factory at an agreed price, to be paid for monthly in cash.  Defendant company neglected to deliver the machines they requested.  The contract provided that plaintiff should not engage in selling any buttonhole machines other than those manufactured by defendant.  In the opinion it is said: "If the court can not order a contract for the making of buttonhole machines to be specifically performed by reason of the impossibility of superintending the details of such a business, it does not follow that the bill may not be retained as an injunction bill.  It was formerly thought that an injunction would not be granted to restrain the breach of any contract, unless the contract were of such a character that the court could fully enforce the performance of it on both sides."  After reviewing the earlier cases, the court continues: "But all these cases were overruled, by one of the ablest chancellors who has adorned the woolsack, in *Lumley* v. *Wagner* [1852], 1 De G., M. & G. *604.  In that case a singer had agreed to sing at the plaintiff's theater for three months and not sing at any other, and the court enjoined her from performing at a rival establishment, though it was clear and was admitted that the court could not oblige her to sing for the plaintiff.  This case was fully in accord with *Morris* v. *Colman* [1812], 18 Ves. 437, which had been disregarded or explained away in many of the intervening cases.  It is now firmly established that the court will often interfere by injunction when it can not decree performance."  The case further, in substance, holds, that if it appears that the negative remedy of injunction will do substantial justice between the parties by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will in-

terfere to restrain conduct which is contrary to the contract, although it may be unable to enforce specific performance. In the decree in the case at bar, the court reserves to appellant the right to move to dissolve or modify the decree if circumstances shall require. In *Western Union Tel. Co. v. Rogers* (1886), 42 N. J. Eq. 311, 11 Atl. 13, it is also held that a party will not be driven to his legal remedy where it may appear that that remedy will prove inadequate. The question in all cases is, whether the remedy is, under the circumstances of the case, full and complete.

Has appellee an adequate remedy at law? Appellee was engaged in the public service to supply electric current, and was under legal obligation to render any one situated on its line, service upon application, the applicant conforming to its rules and regulations. Appellant Beck signed and presented the usual application for the service, which provided that the application should be subject to the conditions printed on the back thereof, and that the written acceptance of the application by the light and power company, or its agents, should make the same a contract between the parties, including all rules and regulations printed or written therein. The contract was accepted by the light and power company. By its terms the company agreed to serve the applicant with electric current and the applicant agreed to receive the same from the company, on its terms, for the period of five years, and, in consideration of the long period of the contract, the price for the current to be a special price of seventy-five cents per ten thousand watts. The applicant "agrees to use enough current, in case same is to be measured by watts meter, to make a monthly bill of $1, or pay the amount of said bill should sufficient current be not used." "Said applicant further agrees that no electricity for light, heat or power other than that covered by

this contract, shall be used upon his premises named herein without the written consent of said light and power company indorsed hereon."

The contract does not stipulate that the company is to furnish any specific quantity of current, nor that the applicant shall take any specific quantity of current. It does stipulate that the applicant will use enough current to make a monthly bill of $1, or pay that amount should sufficient current to make a bill of that amount be not used. By negative averment the applicant agrees that no electricity for light, heat or power, other than that covered by this contract, shall be used in his premises, without the written consent of the company indorsed on said contract. Without reciting specific facts averred in the complaint, we think they show that the damages for the threatened and continuing breach of the contract can not be accurately or even approximately measured or ascertained, and that an action for damages for a breach of said contract would not afford an adequate and complete remedy, unless the stipulation that the applicant will use enough current to make a monthly bill of $1, or pay that amount if sufficient current to make a bill of that amount be not used, can be held as a stipulation in the contract fixing the damage to be paid for a breach thereof. We can not admit that this stipulation is sufficient to fix the amount of damages.

In *Metropolitan Electric Supply Co.* v. *Ginder* (1901), 70 L. J. Ch. 862, the facts are as follows: "The defendant, Thomas Ginder, was a publican carrying on business in a public house in Holborn. On November 16, 1898, he signed what was called in the proceedings, a contract, but which in point of fact was a request, delivered to the plaintiffs under the statutory rights conferred by the act of parliament, requesting a supply of energy to his premises. This request was made subject, among other terms and conditions, to the following: (1) 'The consumer agrees to take the whole of the electric energy required for the prem-

ises mentioned below from the company for a period of not less than five years.' (2) 'The charge for electric energy to be 4½d. per board of trade unit.' On the margin it was noted that in the event of the plaintiff company's standard rate being reduced below the price therein quoted the defendant was to have the benefit of such reduction. The result of the request was that, the plaintiff company being by statute compellable to supply when the request was made, there arose a right in the defendant to have a supply, and accordingly a supply was given him by the plaintiff company. On February 25, 1901, the defendant wrote to the plaintiff company stating that as he was dissatisfied with its light he had instructed another company to fix up its light and was now using it, and requesting the plaintiff company to remove its meter. Thereupon the defendant abandoned the plaintiff company and took his supply from another company." The company prayed for a writ of injunction to restrain the defendant from taking any electric energy from any person other than the company. It was held that the contract contained an implication that the defendant was not to take energy from any one except the company, which in a case of this kind, a trade contract for supply and not for personal services, could be enforced by injunction, and the injunction was accordingly granted. In the course of the opinion it is stated: "The consumer agrees to take the whole of the electric energy required for his premises from the plaintiff company. The company was bound to supply under the statute if asked. The consumer asks. The result was, of course, that there was a right in the consumer to be supplied. The only question for bargain, then, was price, and that was fixed at 4½d. per unit. What were the parties really contracting about in those words? They were contracting not affirmatively for the supply of something, but negatively that the defendant would not take from somebody else. There is no affirmative contract here to take at all. The defendant does not agree that he will take any

energy from the plaintiff company. He says he will take the whole of the electric energy required. It is competent for him to burn gas if he likes, and to require none. The only thing he was contracting about was that if he took electric energy he would take it from the plaintiff company. It seems to me that the whole essence of that contract is that which is not expressed in words, I agree, but which by implication is really the only thing existing—a contract that he will not take from somebody else. He agrees to take the whole from A, which necessarily implies that he will not take from B. As a matter of construction therefore—not by express words, but by necessary implication—I think that there is here an agreement not to take from others." The court then proceeds to consider the authorities relative to the enforcement of negative covenants, implied or expressed, points out the distinction between the class of contracts relating to personal services and those which were made to trade supplies and the effect of negative words in both classes of contracts, and then proceeds: "Now I think this is such a contract [one the subject of equitable jurisdiction] because it appears to me that the contract for this present purpose is not one for the supply by the plaintiff company to the defendant of electricity. He is not bound to take any. The contract really is a contract, the whole of which is in substance the negative part of it, that he will take the whole from them, and will not take it from anybody else. I therefore think that the fact that the contract is affirmative and not negative in form is no ground for refusing an injunction. * * * It seems to me that there is a contract which it was competent for the plaintiff company to make, and that it is entitled to succeed in the action. I must, therefore, grant an injunction to restrain the defendant during the residue of the term of five years which is mentioned in the contract of November 16, 1898, from taking the electric energy required for his premises from any person other than the plaintiff company," etc.

The difference in the case at bar and the case we have just referred to, is that in the latter case the negative covenant is implied and in the former it is expressed. It appears from the English case, and the cases therein referred to, that the case at bar is of equitable cognizance, and that the proper remedy for a continuing breach of the contract is an injunction. The American authorities recognize the equitable jurisdiction for the specific enforcement of trade contracts by injunction, where an action for damages will not afford as complete and adequate a remedy as that of injunction. In *Xenia Real Estate Co.* v. *Macy* (1897), 147 Ind. 568, the court held that the appellee, under the facts alleged in the complaint, was entitled to injunctive relief, saying: "If, from the facts alleged in the complaint, it is apparent that the appellee had no other complete or adequate remedy, the same was sufficient to entitle him to an injunction." In the course of the opinion the court say: "It is not necessary in an application for injunction, as insisted by appellant, to aver and prove that the plaintiff will suffer irreparable injury if the relief by injunction is not granted. All that is necessary is to aver that the plaintiff will suffer great injury." §1162 Burns 1901, §1148 R. S. 1881.

Among the cases cited in *Xenia Real Estate Co.* v. *Macy, supra,* is *Whiteman* v. *Fayette Fuel-Gas Co.* (1891), 139 Pa. St. 492, 20 Atl. 1062, in which a contract between a natural gas company and the owners of a glassworks provided that the former should supply gas for fuel to the latter for all purposes connected with the manufacture of the wares aforesaid, "so long as natural gas may continue to be produced from the territory now or hereafter owned or operated by said Fayette Fuel-Gas Company, its successors or assigns." On a bill averring that, relying on the contract, plaintiff's works had been constructed for the use of natural gas only as fuel, and that the company had shut off the entire supply while the works were in operation,

endangering loss incapable of accurate adjustment, it was held that a preliminary injunction mandatory to the extent of restoring the *statu quo* should issue.

In *Simpson* v. *Pittsburgh, etc., Glass Co.* (1902), 28 Ind. App. 343, it was held that where, by the terms of a natural gas lease, the lessee, as a part consideration for the execution of the lease, agreed to furnish gas to lessor for domestic use during the continuance of the lease, injunction will lie to restrain the lessee from cutting off the supply of gas. The court, on page 354, states the ground for injunctive relief in such case as follows: "The application for an injunction can not be said to be an appeal to equity for the enforcing of performance of a corporate duty of such, or of a duty of public nature, yet the appellant, upon the facts stated in the complaint, will suffer great injury by the cutting off of the supply of gas for domestic use, and he has not a remedy by a single action at law, plain and adequate, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. This is sufficient to entitle him to an injunction. *Xenia Real Estate Co.* v. *Macy* [1897], 147 Ind. 568."

In *Ferris* v. *American Brewing Co.* (1900), 155 Ind. 539, the court held that where a covenant was inserted in a lease prohibiting the lessee from selling beer upon the leased premises, other than that manufactured by a certain brewing company, the company for whose benefit the contract was made may enforce such provision by injunction, the remedy at law being inadequate. In the course of the opinion it is said: "It is said in Greenhood, Pub. Policy, p. 677: 'A contract which secures to the obligee the exclusive custom of the party contracting, especially when by such contract the party making it procures an advantage not otherwise obtainable, is valid although the covenantor be engaged in public business, unless its enforcement would be prejudicial to the public.' Among the illustrations given

by the author are the following: 'A publican, in making a settlement with his creditors, agrees to buy all his beer of them. The agreement is valid. A contracts to furnish B with sewing machines, at a discount, and upon credit, provided B will deal exclusively with him. The contract of B is valid. A agrees to buy of B all the groceries he may need, provided he will furnish them at as low a price as others. The agreement is valid. A covenants not to buy any meat for his trade for six months, of any one but the covenantee. The agreement is valid. These contracts are upheld because they in nowise tend to diminish trade. A man is at liberty to buy of one entirely, if he chooses, and if he concludes to purchase entirely of him, he alone, and not the public, is injured.' * * * Moreover, it is a general rule that where one has made a valid contract that he will not engage in a certain business or occupation, and it is shown that said contract is being violated, to the injury of one entitled to enforce the same, he is entitled to an injunction against the offending party. This is upon the ground that, from the nature of the case, just and adequate damages can not be estimated for a breach of the contract. In other words, the remedy at law is inadequate. *O'Neal* v. *Hines* [1896], 145 Ind. 32, 35, and cases cited; 1 High, Injunctions, §1142. The rule stated clearly applies to this case."

Appellant strongly relies upon *Steinau* v. *Gas Co.* (1891), 48 Ohio St. 324, 27 N. E. 545, a case like the one at bar in some of its features. The action was to obtain an injunction, and a demurrer to the complaint was overruled, and upon appeal the judgment was reversed. In conclusion, the court said: "But a decision of this question is not necessary to the disposition of the case at bar, and that, as well as whether a court of equity should, in any case, where full performance can not be enforced, decree performance of negative covenants of one party, may properly be left to be

determined when a case arises which necessarily requires a decision upon them. We are content to rest the decision of this case upon the ground that the remedy of the defendant in error is at law, and not in equity." The facts in the two cases may be distinguished, as may the case of the *Dewey Hotel Co.* v. *United States, etc., Light Co.* (1901), 17 App. D. C. 356, and many other cases cited by appellant upon this branch of the case. There is a conflict in the decisions upon the question of granting an injunction, when the granting of the injunction will be to effect specific performance of affirmative covenants, unless the affirmative stipulations of the complaining party can be specifically enforced against him, but the Indiana cases favor the granting of the writ. "The granting or reversal of an injunction rests in the sound discretion of a court of equity, and ought not, as a general rule, to be granted, when under the circumstances it would be against good conscience or productive of great hardship." *Loy* v. *Madison, etc., Gas Co.* (1901), 156 Ind. 332.

From the averments of the complaint it is apparent that an injunction will do substantial justice between the parties. It is not against good conscience to restrain conduct 4. which is contrary to the contract. The law favors the performance of valid contracts, and, even if in a given case it might appear that the trial court was justified in the exercise of a sound discretion in the refusal of the writ of injunction, the facts in this case certainly do not justify an appellate court in setting aside the writ, where such sound discretion has been exercised in the issuing of the writ.

The appellant Merchants Heat & Light Company has not joined in the assignment of errors and has not filed a brief.

The court did not err in overruling the demurrer to the complaint.

Judgment affirmed.