[S. F. No. 6390.   In Bank.—October 6, 1914.]

## MARIN WATER AND POWER COMPANY (a Corporation), Appellant, v. TOWN OF SAUSALITO (a Municipal Corporation), Respondent.

MUNICIPAL CORPORATIONS—WATER SUPPLY—VALIDITY OF CONTRACT FOR TERM OF YEARS WITH WATER COMPANY.—A contract between a municipal corporation owning its own water system and a corporation engaged in the business of developing and supplying water, for a bulk supply of water for the use of the municipality and its inhabitants for a period of ten years, is not void as in violation of section 1 of article XIV of the constitution, which provides that the use of all water appropriated for sale or distribution is a public use and subject to state control, and that the rates to be collected for the use of water supplied to any municipality or its inhabitants shall be fixed annually by the governing body of the municipality and continue in force for one year and no longer.

ID.—PURCHASE OF WATER IN BULK—CONSTITUTIONAL PROVISION—PURPOSE AND INTERPRETATION.—While the words of this section of the constitution are very general and refer to the "rates or compensation" to be collected for the use of water supplied to a municipality "or the inhabitants thereof," it is clear from the context that the fixing of rates contemplated is a legislative function, and that there was no intention on the part of the framers of the constitution to make the section apply to the case of a municipal corporation owning its water system and purchasing water in bulk for sale to its inhabitants.

ID.—SECTION 1 OF ARTICLE XIV OF CONSTITUTION—TO WHAT CASES APPLICABLE.—Such section of the constitution must be understood to apply to cases where one has appropriated water generally, for sale, rental, or distribution, and not to cases where sales are made to particular persons at a fixed price by ordinary contracts of purchase and sale.

ID.—DEDICATION OF WATER TO PUBLIC USE—BULK SALE TO MUNICIPALITY.—A sale and delivery of water by a water company to a municipality owning its own water system, to be sold by the municipality to its inhabitants, is not a dedication of the water to a public use so that the rates are subject to municipal regulation.

ID.—REGULATION OF RATES FOR PUBLIC SERVICE—BASIS OF RIGHT.—The right to regulate rates to be paid for a service or commodity rests fundamentally upon the dedication to public use of the property of the person or corporation compelled to submit to the regulation.

ID.—LEGISLATIVE CAPACITY—WHEN CITY DOES NOT ACT IN WHILE ADMINISTERING WATER SUPPLY.—A city does not act in a legislative

capacity in administering a public utility, such as a water system, even within its own limits, but in a proprietary and only *quasi* public capacity.

ID.—CONTRACT FOR WATER SUPPLY—POWER OF MUNICIPALITY—TERMS AND DURATION OF AGREEMENT.—A city of the sixth class owning its own water system has power to enter into a contract with a water company to furnish the municipality a bulk supply of water for the use of its inhabitants for ten years, under section 862, subdivision 3, of the Municipal Corporation Act (Stats. 1883, p. 269); and when a municipal corporation possesses authority to enter into contracts for the supply of water for its own use and for the use of its inhabitants the terms and duration of the agreements rest within the sound discretion of the municipal authorities, and such contracts may be overthrown by courts only in cases of fraud, abuse, or excess of authority, or inequity in the terms of the agreements.

ID.—CONTRACT FOR WATER SUPPLY—QUANTITY TO BE FURNISHED—INCONSISTENCY BETWEEN DIFFERENT PROVISIONS.—In such contract there is no inconsistency between a paragraph providing that the water company shall receive a maximum rate of thirty cents per thousand gallons when the total amount of water furnished shall not exceed an average of two hundred thousand gallons per day, and a paragraph obligating the municipality to pay for not less than one hundred and fifty thousand gallons the first year and not less than two hundred thousand gallons for every other year during the life of the agreement.

ID.—MINIMUM PAYMENT CLAUSE—VALIDITY WHERE ONE PARTY TO CONTRACT IS MUNICIPALITY.—A minimum payment clause is valid in a contract to which one of the parties is a municipality as well as in case of contracts between individuals.

ID.—MUTUALITY OF CONTRACT—PROMISE OF WATER COMPANY TO USE DILIGENCE AND BEST ENDEAVORS.—A provision in such a contract that the water company will "use due diligence to maintain its pipes" in good condition, to employ its "best endeavors" to cause an adequate supply of pure water to flow through its conduits, and in case of deficiency to prorate the supply between the municipality and its other customers, does not invalidate such contract for lack of mutuality; it is the usual provision whereby a public service corporation protects itself from liability for failure to furnish its commodity because of strikes, accidents, and the like, against which it cannot reasonably provide.

ID.—PROTECTION AGAINST EMERGENCIES—VALIDITY OF PROVISIONS IN CONTRACT.—Where a party to a contract is excused from absolute performance because of an emergency the contract is not thereby void for lack of mutuality.

ID.—UNILATERAL CONTRACTS—ENFORCEMENT AFTER EXECUTION.—But even if the water contract here involved were regarded as at first lacking in mutuality, it would be sustainable if the water company

has at all times been ready, able, and willing to perform, and has performed all its duties arising under the agreement, including the supplying of an abundance of pure, fresh water. Contracts unilateral at first are sustained upon execution of the optional consideration.

ID. — TAXATION OF DECREASED POPULATION — WHETHER INVALIDATES WATER CONTRACT.—Such contract is not void on the theory that it unreasonably binds the municipality to make payments which may possibly be raised by taxes to be paid by a decreased population.

ID.—SECTION 548 OF CIVIL CODE—GRANTING OF EXCLUSIVE RIGHT.—Section 548 of the Civil Code is no bar to the purchase of water by the municipality under such a contract, if that part of the section prohibiting the granting of an "exclusive right" is regarded as still in force. The agreement does not violate that portion of the section because it does not contemplate the possibility of the town's future purchase of water from sources other than those owned by the water company.

ID.—SECTION 4412 OF POLITICAL CODE—APPLICATION TO WATER CONTRACT.—Section 4412 of the Political Code, even if still in force, has no application to such contract, but has reference to the supplying of water to public buildings and the term of contract for such service.

ID.—PREVENTION OF CITY FROM PROCURING WATER SUPPLY OF ITS OWN —CONTRACT HAVING THAT TENDENCY.—Such a contract is not invalid as disabling the municipality from acquiring a municipal water supply of its own. A city or town clothed with power to buy water for its own distributing system may agree to purchase water up to a given quantity exclusively from one company. The power to contract for a reasonable length of time implies the power to forego other means of procuring water for a like period.

ID.—LOAN OF CREDIT OF MUNICIPALITY—EXTENSION OF WATER SYSTEM. A promise in such contract to pay for not less than two hundred thousand gallons of water a day does not amount to a loan of the credit of the municipality contrary to the provisions of section 31 of article IV of the constitution, in that the promise is based upon the covenants of the water company to construct a pipe-line extending its system to the municipality.

ID.—BREACH OF CONTRACT—MEASURE OF DAMAGES.—Such contract is not the usual agreement to accept and pay for personal property, and the measure of damages for its breach is not the difference between the contract price and the value of the water to the water company which the municipality does not take. The minimum rate is the true measure of recovery, the promise to pay such sum being a part of the direct obligation of the contract and in no sense a covenant for liquidated damages.

ID.—ACTION TO RECOVER FOR WATER FURNISHED—SUFFICIENCY OF COMPLAINT.—In an action by the water company to recover the balance

due for water furnished under such contract, the omission to allege in the complaint that there was money enough for the payment of the plaintiff's claim in the "Water Supply Fund" or in the "General Fund," to which the plaintiff had promised to look for payment in case of deficiency in the former fund, is not a failure to state a cause of action.

ID.—WATER RATES—CITY PURCHASING WATER TO DISTRIBUTE THROUGH ITS OWN SYSTEM—CONSTITUTIONAL PROVISION.—The municipality, by going into the business of furnishing its inhabitants with water itself, purchasing water from a water company and then delivering it through its own system to its inhabitants, did not become subject to the provisions of article XIV, section 1 of the constitution and violate it when agreeing to establish for a period of ten years rates which will produce a sum sufficient to pay for all water furnished by the water company.

ID.—APPLICATION OF WATER TO PUBLIC USE—CONTRACT PRICE—RATES AND THEIR REGULATION.—While the water supplied by the company to the city is ultimately applied "to public use," the contract price therefor does not constitute the "rates" for the "compensation" subject to the "regulation" mentioned in section 1 of article XIV of the constitution.

APPEAL from a judgment of the Superior Court of Marin County.   E. T. Zook, Judge.

The facts are stated in the opinion of the court.

Lilienthal, McKinstry & Raymond, for Appellant.

O. F. Meldon, and Thomas, Beedy & Lanagan, for Respondent.

MELVIN, J.—Plaintiff sued for the sum of $8,447.76 balance due for water furnished defendant under a contract for use in defendant's municipal water system. Defendant demurred generally; the demurrer was sustained without leave to amend, and from the judgment entered in accordance with said ruling the plaintiff prosecutes this appeal.

The essential facts appearing from the pleading are as follows: Plaintiff is a Californian corporation with power, among other things, to supply water to the incorporated towns in Marin County and to the inhabitants thereof, for domestic and other purposes and to carry on a general water business. Defendant is a municipal corporation of the sixth class.   In 1908 the town of Sausalito incurred a bonded indebtedness of

one hundred thousand dollars for the construction of water-works for the distribution of pure, fresh water to said town of Sausalito and the inhabitants thereof. Subsequently, pursuant to resolution regularly passed by the board of trustees of the town of Sausalito, the president of that board was empowered to execute a certain contract, set forth in full in the resolution and approved by the board, whereby the Marin Water and Power Company agreed to furnish and the town of Sausalito obligated itself to take, a supply of water for distribution through its municipal water system. It was recited in the resolution, among other things, that: "Public interest and necessity require and demand that such supply be obtained from the Marin Water and Power Company, a corporation engaged in the business of developing and supplying water within the county of Marin, and said Marin Water and Power Company being the only person, firm or corporation in the county of Marin presently able to contract for and furnish to the said town of Sausalito a supply of water sufficient and adequate for the needs of said town of Sausalito." Acting under the power conferred by the resolution, the president of the board of trustees executed the agreement which is the basis of this action. In the preamble to this agreement the water company (the "second party") is mentioned as "willing to supply water to said town of Sausalito as a body politic, and not to inhabitants thereof otherwise than as (to) the same may be supplied to said inhabitants by said municipality through its own distributing system and under its own exclusive control." By the agreement said second party obligates itself to proceed diligently to lay its pipes, conduits, etc., from Corte Madera, to the town limits of Sausalito and to maintain said pipes, conduits, etc., in good condition during the life of the contract. The water company waives all rights which it might otherwise have of supplying water to any person within the town limits of Sausalito except the Northwestern Pacific Railroad Company. The water company also agrees accurately to measure all of the water furnished. By the terms of the contract the Marin Water and Power Company is to "receive and accept as payment for all water furnished the maximum rate of thirty (30) cents per thousand gallons when the total amount of water furnished to first party shall not exceed an average during the respective year of two hundred thousand (200,000) gallons per day.

And when such average amount of daily consumption shall exceed two hundred thousand (200,000) gallons the rate per thousand gallons for all water furnished shall diminish proportionately." Then follows a schedule prescribing a reduction in the rate where the amount used shall exceed two hundred thousand gallons a day. The seventh paragraph of the agreement is in the following language:

"First party, in consideration of the foregoing agreements to be performed by second party, hereby agrees that it will, during the first year of the term hereof, pay for not less than one hundred and fifty thousand (150,000) gallons of water per day, and after said first year, for not less than two hundred thousand (200,000) gallons per day for every year during the life of this agreement."

Time of payment and method of calculating amounts due are the next subjects treated, and the "first party," the town of Sausalito, agrees to create by ordinance a fund to be called the "Water Supply Fund" and (to quote further) "first party agrees that it will fix and establish water rates to be paid by its customers in said municipality, which shall be sufficent to pay for all water supplied to it by second party, and will cause to be collected and paid into said fund all said water rates, and it agrees that said fund shall be subject to the payment to second party of amounts to become due to second party hereunder, and should said fund in any month be insufficient to meet the payments then due second party hereunder, first party will at once cause to be transferred to said fund, from the general fund of first party, an amount sufficient to supply such deficiency." This is followed by a provision that nothing in the agreement shall be deemed as incurring any indebtedness by the party of the first part in violation of section 18 of article XI of the constitution of California. The second party is granted permission to use the streets of Sausalito for its water mains for the purpose of supplying water to points outside of and beyond said town. The first party further agrees that whenever it shall cease to take its entire water supply and that of its inhabitants from the second party (except when said second party is unable to furnish said supply) the second party shall then be granted a franchise to occupy the streets of Sausalito for the purpose of supplying said town and its inhabitants with water for domestic and all other purposes. The term of the

agreement is ten years from the first day of August 1909, the town of Sausalito reserving an option for an extension of the contract for an additional period of ten years.

At the time of entering into the contract plaintiff owned a water system, the most southerly point of which was at Corte Madera, six miles from Sausalito. Immediately upon the execution of the contract plaintiff proceeded diligently to construct its pipes from Corte Madera to the town limits of Sausalito, at a cost of more than one hundred and eleven thousand dollars. Prior to August 1, 1909, defendant installed a water system within its corporate limits and since said date defendant has been continuously taking water from plaintiff, using part of said water for its own municipal needs and selling the remaining part to its inhabitants and to others at rates established by said municipal corporation. During the year ending July 31, 1911, defendant took from plaintiff under contract something in excess of forty-two millions of gallons, an average of less than two hundred thousand gallons a day. Plaintiff does not know what amount of money was in defendant's water fund on September 1, 1911; but for water furnished during that year plaintiff has received $13,452.24. It asserts that the amount due under paragraph VII of the agreement was $21,900.00 and prays judgment for the balance of $8,447.76 alleged to be due.

The order of the superior court sustaining the demurrer is based upon a written opinion by the learned judge of that court and we will first discuss the point upon which that opinion rests, which is, in brief, that the contract being for the supply of water for a period greater than one year is void by reason of the limitations expressed in section 1 of article XIV of the constitution of California as that article existed at the time the contract was made. Appellant's position is that the provisions of that section of the constitution were never intended to apply and do not apply to a contract for the supply of water to a municipality in gross for use and sale by it through its own water system, but if intended to apply to such a transaction they are void by reason of conflict with the constitution of the United States.

The pertinent portion of article XIV, section 1, as it existed when the contract was made, is as follows: "The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared

to be a public use, and subject to the regulation and control of the state, in the manner to be prescribed by law; *provided,* that the rates or compensation to be collected by any person, company, or corporation in this state for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the board of supervisors, or city and county, or city or town council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year and no longer.'' Pursuant to this section the act of March 7, 1881 (Stats. 1881, p. 54) was passed. It provided in detail the steps to be taken by the legislative body of each municipality in fixing water rates annually. While the words of this section of the constitution are very general and refer to the ''rates or compensation'' to be collected for the use of water supplied to a municipality ''or the inhabitants thereof'' it is clear from the context that the fixing of rates contemplated is a *legislative* function and it seems equally plain that there was no intention of the framers of the constitution to make the section in question apply to the case of a municipal corporation owning its water system and purchasing water in bulk for sale to its inhabitants. The right to regulate rates to be paid for a service or commodity rests fundamentally upon the dedication to public use of the property of the person or corporation compelled to submit to the regulation. Such was the doctrine of the case of *Munn* v. *Illinois,* 94 U. S. 123, [24 L. Ed. 77], and such has been the principle followed for hundreds of years in all jurisdictions deriving their jurisprudence from the common law. In *Munn* v. *Illinois,* Mr. Chief Justice Waite quoted the language of Lord Chief Justice Hale, written more than two hundred years before, that when private property is ''affected with a public interest, it ceases to be *juris privati* only.'' Judge Dillon in his work on Municipal Corporations (5th ed., p. 2233) thus expresses the rule: ''The regulation of rates is governmental· in its nature, and the power is intended to· be exercised for the benefit of the inhabitants of the municipality.'' The same principle is expressed in *Contra Costa Water Co.* v. *City of Oakland,* 159 Cal. 333, [113 Pac. 668]. But a city does not always act in a legislative capacity. It does not so act in administering

a public utility such as a water system even within its own limits but "in a proprietary and only *quasi* public capacity." (*South Pasadena* v. *Pasadena Land Co.,* 152 Cal. 593, [93 Pac. 490].)   In the case last cited this court was considering the *status* of a municipal corporation operating its own water system for the benefit of its own citizens and also selling water to a part of the inhabitants of another city, and it was made clear that such a corporation in its capacity as a vendor of water is upon practically the same plane as a water company engaged in the same business.   In the earlier case of *Davoust* v. *City of Alameda,* 149 Cal. 70, [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760], it was held that a municipal corporation operating an electric light plant is liable for injuries caused by the negligence of its servants in the operation of such utility just as another corporation or person would be.   In the opinion in that case, *Western Saving Fund Society* v. *Philadelphia,* 31 Pa. St. 183, [72 Am. Dec. 730], is approvingly quoted to the following effect: "The supply of gaslight is no more a duty of sovereignty than the supply of water.   Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means.   If this power is granted to a borough or a city, it is a special private franchise. . . . The whole investment is the private property of the city, as much so as the lands and houses belonging to it. . . . It (the city) stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."   The true scope of article XIV of the constitution was under discussion in *Thayer* v. *California Development Co.,* 164 Cal. 134, [128 Pac. 27].   The court was there interested in determining what constitutes a dedication of water to public use and the following language was employed: "According to the theory of the plaintiff in this case, whenever the owner of a water supply determines to and does sell it for a price agreed on between himself and the purchasers, it immediately becomes subject to public use, and any other person to whom it can be conveniently distributed in the same manner would have the right to a proportionate share of the water on the same terms as the purchasers and, if the supply is limited, the first purchasers must divide with all others who may come in and claim a share.   Under that theory, where a person having a

surplus of water parts with a portion of it by sales to others he thereby appropriates such portion to purposes of sale and dedicates it to public use. This application of the section would destroy private rights in water and convert every sale thereon into a dedication to public use. We do not believe that the constitution was intended to have such effect, or that it should be so construed. Article XIV taken as a whole shows plainly that it was intended to regulate the use of water appropriated and dedicated generally for sale and distribution among an indefinite number of users. It could not have been intended to declare that a single sale of a part of his water by one having more than he needs would convert the use into a public use in which others could share. If a single sale could not do this, other sales of like character would not accomplish it. The section must be understood to apply to cases where one has appropriated water generally, for sale, rental, or distribution, and not to cases where sales are made to particular persons at a fixed price by ordinary contracts of purchase and sale.'' If the sale of water under contract to the city was not a dedication of it to public use it is clear that such sale was not subject to the rate regulating power of the municipality conferred by the fourteenth article of the constitution. We are of the opinion that such sale and delivery were no more a dedication of the water to a public use than would have been a similar transaction between the owner of surplus water and a corporation engaged in the distribution of water to a city. It has been held that the selling of water to a public service corporation does not make the persons using such water customers of the company that sold it, at an agreed price, to the distributing company. (*Garrison* v. *North Pasadena Land etc. Co.*, 163 Cal. 239, [124 Pac. 1009].) It is no doubt true that the plaintiff in this action is a public service corporation but it has not dedicated its water supply to the inhabitants of Sausalito nor to the city in the usual sense of the term. The relation of the plaintiff to the municipality as such is purely contractual and it has no relation to the inhabitants or individual water users as such.

Respondent cites authorities to the effect that a board of supervisors or other governing body of a municipality may fix rates for water supplied to such city, city and county, or town, but the cases involved facts differing greatly from those presented by this record. For example, it was held in *Spring*

*Valley Water Works* v. *San Francisco,* 61 Cal. 18, that water supplied to the city and county "is as fully covered by the express language of the article" (art. XIV, sub. 1) "as is water supplied to the individual consumers," and that the supervisors had power to fix a rate for water sold to the city. But there the court was considering the sale of water to the city and county as a consumer, using, for various municipal purposes, water purchased from a company occupying its streets under a franchise to sell to individuals and to collect rates. Of course the municipality may, in its governmental capacity, regulate the rates at which water may be delivered to it by a public service corporation and received by the municipality in its role of consumer. Such was the ruling in *Spring Valley Water Works* v. *Schottler,* 110 U. S. 348, [28 L. Ed. 173, 4 Sup. Ct. Rep. 48]. In the case of *Home Telephone and Telegraph Co.* v. *Los Angeles,* 211 U. S. 270, [53 L. Ed. 176, 29 Sup. Ct. Rep. 50], it was held that a city may not, unless by law authorized thereto, surrender by contract a *governmental* power such as fixing rates and that the city's position as a heavy rate payer did not disqualify the council from fixing telephone rates.

The case of *Freeport Water Co.* v. *Freeport City,* 180 U. S. 592, [45 L. Ed. 679, 21 Sup. Ct. Rep. 493], was one involving a contract whereby a city granted to a water company the exclusive right to supply the city with water for thirty years. Such contracts were permitted by the law of Illinois, but cities were given power to authorize a corporation to construct waterworks and to maintain them "at such rates as may be fixed by ordinance and for a period not exceeding the thirty years." A bare majority of the supreme court of the United States held that the interpretation given to the statute by the supreme court of Illinois must prevail because the words "fixed by ordinance" might as well mean "fixed by ordinance from time to time," as the state court decided, or "fixed by ordinance for the whole period of thirty years." But in that case it was expressly held that a city may be invested with power to bind itself by an irrevocable contract not to regulate water rates, citing in support of that view several cases, among them being *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558, [44 L. Ed. 886, 20 Sup. Ct. Rep. 736]. But we need not review in detail all of the authorities brought to our attention by respondent. No case has been presented

holding that a municipal corporation may vary the terms of its own solemn contract, under the guise of rate regulation, when it has gone into the business of furnishing to its citizens a commodity which it purchases, under said contract at wholesale. Section 1 of article XIV is no bar to a city's entering into a contract such as the one before us and if the contract be void it must be for some other reason.

Section 862, subdivision 3 of the Municipal Corporation Act, [Stats. 1883, p. 269], gives to trustees of cities of the sixth class power "to contract for supplying the city with water for municipal purposes." Appellant insists that under that grant of power the city had the right to enter into this agreement. That the supplying of water to its inhabitants is a municipal purpose there can be no doubt (*City of South Pasadena* v. *Pasadena Land & Water Co.,* 152 Cal. 593, [93 Pac. 490]), and it is the general rule that when a municipal corporation possesses authority to enter into contracts for the supply of water for its own use and for the use of its inhabitants the *terms* and *duration* of the agreements rest within the sound discretion of the municipal authorities and such contracts may only be overthrown by courts in cases of fraud, abuse, or excess of authority, or inequity in the terms of the agreements. (Dillon on Municipal Corporations (5th ed.), sec. 1307.) We are of the opinion that this contract is not, upon its face, vulnerable to any of the above enumerated objections.

Respondent insists, however, that the town has paid more than was due under the contract because the number of gallons of water admittedly furnished during the year would be worth, at thirty cents per thousand gallons, less than the amount admittedly paid to plaintiff. In support of this contention it is said that paragraphs VI and VII of the agreement are inconsistent and that this inconsistency must be resolved in favor of the town. One of these paragraphs provides that the second party shall receive a maximum rate of thirty cents per thouand gallons when the total amount of water furnished shall not exceed an average of two hundred thousand gallons per day. The seventh paragraph, previously quoted herein, binds the town to pay for not less than one hundred and fifty thousand gallons the first year and not less than two hundred thousand gallons for every other year during the life of the agreement. We fail to see any incon-

sistency in these two paragraphs. By the former paragraph, two hundred thousand gallons per day is fixed as the point beyond which the proportional diminution in the rate shall begin, while by the latter the town binds itself to pay for at least two hundred thousand gallons per day after the first year. Minimum payment clauses have been held valid in contracts between individuals. We see no reason to change the rule in the instance of a contract to which one of the parties is a town. In *Beck* v. *Indianapolis Light & Power Company,* 36 Ind. App. 600, [76 N. E. 313], the contract in suit bound the consumer to use enough electric current to make a monthly bill of one dollar or pay the amount of said bill should sufficient current be not used. The court said: ''This stipulation is a part of the direct obligation of the contract and cannot be properly construed to be an agreement to pay damages for the breach thereof,'' citing *Johnston* v. *Cowan,* 59 Pa. St. 275.

Respondent also attacks the agreement on the ground that the town had no power to promise to pay the plaintiff sixty dollars per day for ''trying to furnish water.'' This position is taken in view of the language of the third paragraph in which the water company promises to ''use due diligence to maintain its pipes'' in good condition; to employ its ''best endeavors'' to cause an adequate supply of pure water to flow through its conduits; and in case of deficiency to prorate the supply between Sausalito and its other customers. This same contention is made in several forms in respondent's brief, but wherever made is without merit. It is said that all the company needed to do to entitle it to be paid for two hundred thousand gallons a day was to build a pipe-line and then use its ''best endeavors'' to make enough water flow through it. The paragraph in question is not reasonably subject to such construction. It is the usual provision whereby a public service corporation protects itself from liability for failure to furnish its commodity because of strikes, accidents, and the like, against which it cannot reasonably provide. Where a party to a contract is excused from absolute performance because of an emergency, the contract is not thereby void for lack of mutuality. (*Semon, Bache & Co.* v. *Coppes, Zook & Mutschler Co.,* 35 Ind. App 351, [111 Am. St. Rep. 171, 74 N. E. 43].) In *Klosterman* v. *United Electric Light and Power Co.,* 101 Md. 29, 33, [60

Atl. 252], the court was discussing a contract whereby certain subscribers agreed to pay a sum not less than a stated amount for electricity during the season "whether lamps burn or not." The agreement contained this language: "The electric company does not bind itself to furnish current at any particular time after the application has been accepted." It was held that there was no lack of mutuality, the quoted language being intended to protect the defendant from unforeseen delays, such as strikes, but did not exempt it from complying literally with all of the terms of the contract, unless prevented from so doing by the exceptional occurrences against which it sought to provide. Generally a contract by which one party agrees to use his "best endeavors" to promote the sale of a commodity produced by the other party and to purchase from the producer all of such commodity as he may need and binding the producer absolutely to sell is valid and not wanting in mutuality. (*Spencer* v. *Taylor*, 69 Kan. 493, [77 Pac. 276]; *Emerson* v. *Pacific Coast & Norway Packing Co.*, 96 Minn. 2, [113 Am. St. Rep. 603, 6 Ann. Cas. 973, 1 L. R. A. (N. S.) 445, 104 N. W. 573].) Analogous to these are cases in which a vendee agrees merely to buy what he needs of a certain product and the vendor absolutely promises to sell. Such a contract imposes upon the vendee the duty of buying what he requires from the vendor and upon the latter the obligation to sell to him at the contract price. (*Manhattan Oil Co.* v. *Richardson Lubricating Co.*, 113 Fed. 923, [51 C. C. A. 553]; *Klipstein* v. *Allen*, 123 Fed. 992.) And even contracts unilateral at first are sustained upon execution of the optional consideration. In this pleading it is alleged that at all times the plaintiff was ready, able, and willing to perform and did perform all of its duties arising under the agreement, including the supplying of an abundance of pure, fresh water; so that even if we should look upon the obligation of plaintiff to use its best endeavors as wanting the quality of mutuality at first, the perfect success of such endeavors, as pleaded, makes the agreement one capable of enforcement. (*Spires* v. *Urbahn*, 124 Cal. 110, [56 Pac. 794]; *Gallagher* v. *Equitable Gas Light Co.*, 141 Cal. 707, [75 Pac. 329]; *Bell* v. *Southern Pacific R. R. Co.*, 144 Cal. 573, [77 Pac. 1124].)

One of the cases upon which respondent lays great stress as bearing upon the alleged unfairness of the contract is *Flynn* v. *Little Falls Electric & Water Co.*, 74 Minn. 183, [77 N. W.

38, 78 N. W. 106]. The contract there discussed was one in which the city as a consumer was dealing with the water company. It was not acting as a water-selling corporation. The case is therefore not of any great value to us here. It was held by the supreme court of Minnesota that the long term of the contract, thirty years, the great number of hydrants to be paid for (thirty-five or forty per cent more than the then present needs of the municipality) and the excessive price per hydrant (one hundred per cent more than the real value) rendered the agreement void for unfairness. It was held, however, that the municipality had power to make reasonable contracts for the supply of water to it and its inhabitants.

Nor is the contract void because it unreasonably binds Sausalito to make payments which may possibly be raised by taxes to be paid by a decreased population. Respondent cites in the discussion of the possible decrease of the population and the bearing of such a phenomenon upon the agreement before us, the case of *Westminster Water Co.* v. *Mayor & Common Council of Westminster,* 98 Md. 552, [103 Am. St. Rep. 424, 64 L. R. A. 630, 56 Atl. 990]. The citation is not apt. The contract there considered was one for the introduction of a supply of water into the city to be used in part for the suppression of fires and the sprinkling of streets. It was held *ultra vires* because it sought to bind the city *perpetually,* and unreasonable because it would deprive the council of legislative rights.

Section 548 of the Civil Code is no bar to the purchase of water by a city under such a contract as this. That section was enacted in 1872, long before the adoption of section 19 of article XI of the constitution and so far as it makes a street franchise necessary was abrogated by that section which at the time this contract was made gave to any corporation the right to occupy the streets of a city for the purpose of supplying water to the inhabitants or to the city itself. If we regard that part of section 548 of the Civil Code prohibiting the granting of an "exclusive right" as still in force, this agreement does not violate it because the contract does contemplate the possibility of the town's future purchase of water from sources other than those owned by plaintiff. Section 4412 of the Political Code, even if still in force, has reference to the supplying of water to public buildings and the term of

contract for such service.   Obviously it has no application to the facts of this case.

It is contended that the contract disables the city from acquiring a municipal water supply of its own, and *Long* v. *City of Duluth,* 49 Minn. 285, [32 Am. St. Rep. 547, 51 N. W. 913], is cited.   That case held that Duluth could not grant a monopoly and exclude itself from establishing a municipal water plant.   Here Sausalito has established a municipal water system and formed a monopoly for itself by excluding the plaintiff and all others from serving its inhabitants.   But we see no reason why a city or town clothed with power to buy water for its own distributing system may not agree to purchase water up to a given quantity exclusively from one company.   Such a contract would be enforced even if the city should conclude to procure a supply of its own in addition to its own works.   The power to contract for a reasonable length of time implies the power to forego other means of procuring water for a like period.   (*Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 7, [43 L. Ed. 341, 19 Sup. Ct. Rep. 77].)

Does defendant's promise to pay for not less than two hundred thousand gallons of water a day amount to a loan of the credit of the town contrary to the provisions of section 31 of article IV of the constitution?   Our answer to this question is in the negative.   It is contended that the promise to pay for two hundred thousand gallons of water per day was based upon the covenants of the company to do certain things, among them to build a pipe-line from Corte Madera, and that therefore the construction of the said pipe-line was accomplished upon the loaned credit of the municipality.   But we cannot accept that view.   The obligation of the company was to be ready to deliver two hundred thousand gallons of water per day.   The building of the pipe-line without the delivery of the water, or the ability to deliver it, would have entitled the plaintiff to nothing at all.   There is no parallel between this case and *Higgins* v. *San Diego Water Co.,* 118 Cal. 524, [45 Pac. 824, 50 Pac. 670].   In that case the rental which the town agreed to pay was based in part, at least, upon the consideration of the company's promise to build and operate a railroad outside of the city as the company's private enterprise.   Here the company had a water supply distant from Sausalito, and the city contracted in view of that cir-

cumstance.   The company's promise to extend its pipes at its own expense so that it might deliver water to the city was not at all analogous to the promise discussed in the Higgins case. Of course, the contracting parties considered, as was proper, the reasonableness of the terms in view of the service to be rendered and the cost of performing such service, but we fail to see how the fact that part of the cost to the company was to be incurred after the signing of the contract converted any of the stipulations thereof into a loan of the town's credit.   If the water company, at the date of the bargain with the city, had owned a pipe-line capable of conveying sufficient water to the limits of the town, the trustees, in deciding whether or not the terms discussed were reasonable, would have taken into consideration the value of that pipe-line as a part of the works of the water company.   We fail to see how the situation was changed by the fact that conduits from Corte Madera to Sausalito were necessary before the Marin Water & Power Company could deliver water to the latter city.   Neither does the fact, if it be a fact, that the water company would not have extended its system to Sausalito if this contract had not been made, in any way alter the situation.   But it does not by any means appear that the extension of the water system of the plaintiff was induced solely by reason of the town's patronage.   While the water company obligated itself to lay pipes from Corte Madera, it also secured the privilege of laying its mains through the streets of Sausalito for the purpose of delivering water to persons residing beyond and outside of that town.

*Alter* v. *Cincinnati,* 56 Ohio St. 59, [35 L. R. A. 737, 46 N. E. 69], declared unconstitutional an act which sought to permit cities to own waterworks in partnership with private proprietors.   That authority is not at all in point here, and contains nothing in conflict with the views here expressed.

Respondent assigns as a reason why its demurrer was properly sustained, the failure of the complaint to set forth the damage suffered by appellant which, according to respondent's theory, should be measured by the terms of section 3311 of the Civil Code as the difference between the contract price and the value to the water company of the water which the town of Sausalito did not take.   The contract with which we are here concerned, however, is not the usual agreement to accept and pay for personal property.   It is, as we have

shown, one of that class of agreements in which one of the parties promises to pay a minimum sum for a commodity at a fixed rate, such amount to become due whether enough of the commodity to equal such minimum price at the agreed rate is required or not. Such agreements have been upheld and the minimum rate has been sustained as the true measure of recovery, the promise to pay such sum being a part of the direct obligation of the contract and in no sense a covenant for liquidated damages in case of breach. (*Beck* v. *Indianapolis Light & Power Co.,* 36 Ind. App. 600, [76 N. E. 313]; *Klosterman* v. *United Electric Light & Power Co.,* 101 Md. 29, 33, [60 Atl. 252].)

The omission from the complaint of an allegation that there was money enough for the payment of plaintiff's claim in the "Water Supply Fund" or in the "General Fund" (to which plaintiff had promised to look for payment in case of deficiency in the former fund) was not a failure to state a cause of action. The condition of a particular fund would have nothing to do with the justness of a claim and the depletion of such a fund is never a defense to an action against a municipality. The averment of the amount of money in a fund from which a given claim must be paid is therefore not necessary. (*Weaver* v. *San Francisco,* 111 Cal. 327; [43 Pac. 972]; *Higgins* v. *San Diego Water Co.,* 118 Cal. 528, [45 Pac. 828, 50 Pac. 670]; *Doland* v. *Clark,* 143 Cal. 179, [76 Pac. 958].)

Respondent asserts that the town by going into the business of furnishing its inhabitants with water itself becomes subject to the provisions of article XIV, section 1 of the constitution, and that it violates that section of the constitution when it agrees to establish for a period of ten years rates which will produce a sum sufficient to pay for all water furnished by the water company. In *People* v. *Stephens,* 62 Cal. 237, Mr. Justice Ross writing the opinion of the court, declared it too plain for argument that the rates or compensation required to be fixed by that section of the constitution did not mean the rates or compensation to be collected by the municipality itself for water which it should furnish. *Feil* v. *City of Coeur D'Alene,* 23 Idaho, 32, 63, [43 L. R. A. (N. S.) 1095, 129 Pac. 643], was a case dealing with the bonds issued to pay for a municipal water system which was to be purchased. In the dissenting opinion of Mr. Justice Stewart is a statement that the city may annually regulate rates in spite of an or-

dinance pledging it to keep in force prices sufficient to pay the expenses of operation and other charges in favor of the bonds.    This is not authority on the point in support of which it is cited.

Respondent cites authorities to support the proposition that furnishing water to a town for distribution through its municipal system is a dedication of the water to a public use. It cites authority to the effect that water may be condemned as for a public use even where the distribution is to be made in part through the instrumentality of corporations other than the one seeking the condemnation.    Undoubtedly that is the doctrine of such cases as *State* v. *Superior Court of King County,* 52 Wash. 199, [21 L. R. A. (N. S.) 448, 100 Pac. 317], the strongest authority on this point which is presented, but cases of eminent domain throw no light upon the main question in this case.    While the water supplied by plaintiff to defendant is ultimately applied to public use, does the contract price therefor constitute the "rates" or the "compensation" subject to the "regulation" mentioned in section 1 of article XIV of the constitution?    We have been compelled to answer that question in the negative.

The judgment is reversed.

Lorigan, J., and Henshaw, J., concurred.

SHAW, J., concurring:—I concur in the judgment, but I do not think it is necessary to consider all the questions discussed in the opinion of Justice Melvin.    I base my concurrence upon the following propositions.    I think it sufficiently appears that the Marin Water and Power Company was a public service corporation, engaged in selling water to the public.    It does not follow, however, that all of the water it owned was actually applied to public use or ever had been so applied.    The water which it agreed to sell and deliver to the town of Sausalito by the contract sued on, was water which had not been previously used, either by the said company or by the public.    If it had appeared that some rate-fixing authority having power in that behalf had fixed rates to be charged by the Marin Water and Power Company for sales of water by it to public use, it may be that a contract between the company and a purchaser for the sale of water at a different rate would be, to that extent, inoperative.    But in this

case no rate-fixing power having jurisdiction to fix rates for that company had ever exercised such power, and no rates at which that company should sell this water had been fixed. In this situation, the company clearly had the right to fix its own rates and make agreements with others for the sale of its water upon such rates, and such contracts would be binding upon both parties, at least until the proper authority had fixed a different rate. (*Fresno C. & I. Co.* v. *Park,* 139 Cal. 437; [62 Pac. 87]; *Stanislaus Water Co.,* v. *Bachman,* 152 Cal. 730, [15 L. R. A. (N. S.) 359, 93 Pac. 858].) This being an action to recover the amount due on such a contract for the sale of the water at a rate fixed by the parties, and no governmental authority having fixed a different rate, there can be no legal objection to the validity of the agreement which is available as a defense to the claim for payment of the price agreed upon. If the Marin Water and Power Company was not a public service corporation, or had not dedicated the water which was the subject of this particular sale to any public use, there can be no question but that the contract under consideration would be valid and enforceable. In either case, therefore, I think the contract was valid and that the plaintiff was entitled to recover the amount due under it.

What the effect would be if a rate were fixed by competent authority for the government of said company in its supply to consumers, is a question not here involved. Nor does the question arise whether the town of Sausalito could, by ordinance, fix rates for the Marin Water and Power Company different from those fixed by this contract. It has not fixed such rates. It is not seriously disputed that the town may control the rates to be charged by it to its inhabitants for this water so long as it does not thereby prevent the enforcement of this contract. What would be the result if such rates were too small to enable it to pay the sums due the company is another question not here involved. The possibility that it may do this is no defense to an action for water already furnished, nor does it make the contract invalid as against public policy. In my opinion none of these questions need be decided in this case. The case, as presented, is the very simple and ordinary case of an action to recover a sum due upon a contract as the purchase price of property sold and delivered in pursuance thereof.

For these reasons I think the plaintiff was entitled to recover and that the judgment should be reversed.

Sloss, J. concurred.