[S. F. No. 11479. In Bank.—July 17, 1928.]

L. D. ARMSTRONG, etc., Respondent, v. LASSEN LUMBER AND BOX CO. (a Corporation), Appellant.

Cushing & Cushing and Walter Slack for Appellant.

Frank W. Street and Horace M. Street for Respondent.

PRESTON, J.—This action was brought to recover damages growing out of the sale on March 24, 1922, by defendant to plaintiff of a used 80-horsepower return tubular boiler.

The complaint, as finally amended, in substance alleged that prior to March 10, 1922, plaintiff informed defendant that he was about to enter into a contract with a customer, viz., Leal & Sons Lumber Company, for the sale to said company of one 80-horsepower return tubular boiler, in good condition, built for 140 pounds per square inch working pressure, with all necessary fittings, etc.; that defendant stated it was the owner of a boiler of the kind and character specified, which it would sell to plaintiff for the sum of $800; that plaintiff, relying upon the honesty and integrity of defendant and upon the truth and correctness of said representations, on March 10, 1922, entered into an agreement in writing to sell said boiler, complete with fittings, to said Leal & Sons for the sum of $1,575; that on March 24, 1922, plaintiff paid defendant said purchase price of $800 and received from it a bill of sale for said boiler; that immediately thereafter said boiler was dismantled and shipped by freight from Susanville, where it was located, to Oroville, whence it was hauled by wagon to the sawmill of Leal & Sons, at a hauling cost of $140; that plaintiff was informed by said Leal & Sons that upon arrival they found said boiler was not such a one as they were entitled to receive under their contract; that it was old, wornout, bagged, leaky, damaged, had a lamination, and was valueless; that plaintiff thereupon sent mechanics and a state inspector to try to repair and to inspect it, at a total cost of $232.10; that said inspector condemned said boiler; that plaintiff was unaware of its defective and useless condition and thereafter settled and compromised the demand of Leal & Sons against it by furnishing them, in lieu of said defective boiler, a used water tube boiler (a boiler of a different type), procured at a cost to plaintiff of $1,933.18,

for which said Leal & Sons paid only $1,575, all to plaintiff's damage in the sum of $2,305.28. The first count of said complaint alleged a cause of action for deceit; the second for breach of contract.

The answer denied the material allegations of the complaint, with the exception of sale of the boiler and execution of bill of sale therefor. The trial court found that defendant had misrepresented to plaintiff the condition of said boiler, which was, in fact, worthless and of no value, and fixed damages at $2,113.29, being $1,933.18, cost of the substituted water tube boiler and its erection, plus $180.11, plaintiff's expenses in endeavoring to service the old boiler. Judgment for said sum was accordingly entered in favor of plaintiff and there was also included therein an allowance of interest at seven per cent per annum on the purchase price of $800 from March 24, 1922, and costs. Defendant appealed from the judgment and also from an order made after entry thereof allowing plaintiff to amend the second amended complaint.

■ It appears that during the trial plaintiff was granted permission to amend its second amended complaint to conform to proof. However, through neglect or inadvertence, the formal amendment was not engrossed and made part of the record until after this appeal was taken, at which time it was filed under order of the trial court on motion of plaintiff after hearing thereon. The amendment set forth the facts with respect to replacement of the boiler sold by defendant with a used water tube boiler. The propriety of permitting the amendment is not questioned so much as is the fact that plaintiff had more than a reasonable time within which to file it; that no showing was made of inadvertence or excusable neglect explaining his failure to do so, and by virtue of entry of the judgment and the appeal therefrom the court lost jurisdiction to entertain plaintiff's motion.

This was a matter for exercise of the discretion of the trial court, and it does not appear that defendant suffered prejudice by its action. Courts are liberal in the allowance of amendments in order that pleadings may conform to proof, and here said amendment was offered and allowed at the time the proof was taken. The fact that the formal pleading was not made a part of the record until later is

immaterial under the circumstances. This very question arose in the case of *Stark* v. *Wellman,* 96 Cal. 400, 402, 403 [31 Pac. 259], and the court there said: "Although plaintiff announced that the amendment would be made, the amendment was not actually made until after the verdict and the entry of judgment. This is assigned as error, and the ruling is brought here by a bill of exceptions. But here, I think, we can plainly see that the defendant was not injured. . . . Here we know that the proposed amendment did not and could not have benefited the plaintiff or injured the defendant. It did not change the character of the complaint in any respect. But if its effect had been to help the complaint, the defendant still was not injured, for he tried his case with reference to it, and was not prejudiced by the fact that it was not reduced to writing until afterwards."

█ Appellant contends that the findings as to fraud and misrepresentation cannot be sustained by the evidence nor can the judgment be upheld upon any theory of breach of warranty; also that, admitting the finding of fraud to be sustained by the evidence, the measure of damages adopted by the trial court was nevertheless incorrect. To our mind the latter position is sound and necessitates a reversal of the judgment; hence this contention alone will receive our consideration.

There is some conflict in the evidence, it is true, but it can scarcely be questioned that the record furnishes ample support for the conclusion that the boiler, instead of being a used boiler in good condition for 140 pounds working pressure, was in fact, by reason of burnt out rivets, leaks, bags and a lamination, defective and practically valueless. The sufficiency of the evidence to warrant a finding of fraud is open to debate, but, as above stated, we need not definitely determine this contention. These observations are far from holding, however, that defendant should be forced to bear the burden of plaintiff's entire loss by reason of its dealings with a third party by a written contract antedating the contract with defendant, and to which defendant was not a party and of which it had no specific knowledge. The most that was told defendant by plaintiff's agent was that plaintiff desired to purchase the boiler for resale and later defendant was given the name of the company to which said boiler should be shipped. And in this behalf

said agent misrepresented the intended resale price, stating to defendant that it was to be $900 (which would give a profit of $100), instead of $1,575, the price mentioned in the Leal & Sons contract.

The bill of sale executed by defendant described the article as follows: "One butt-strap boiler 60″ in diameter by 16′ long for 140 pounds working pressure complete *with breachings, stack, front grates, and full complement of fittings.* Boiler now located at our plant at Susanville, California. Above consideration includes delivery of boiler on cars *in good condition at Susanville.*"

Respondent's contract with Leal & Sons covered in part: " . . . one 80 HP return tubular boiler, designed and built for 140 pounds working pressure. This is the boiler from Nevada . . . and is an *exceptionally 'fine equipment.* This boiler will be complete with all the necessary fittings consisting of *steam gauge, water column, safety valves, blow-off valves, and feed valves,* . . . There will also be furnished *one stack 24 to 28″ in diameter of #12 ga. steel 70′ in length.* . . . We will also furnish *working drawings of brick setting, also the arrangement of the furnace construction* . . . "

Even a cursory examination of the two documents reveals that plaintiff's contract of resale covered far more than the boiler purchased from defendant. If plaintiff had submitted the Leal & Sons contract to defendant and had only resold what it contracted to buy from defendant, the loss with some show of reason might be claimed as the measure of damages. But it is manifestly unfair to hold defendant liable for $2,113.29 under the circumstances here shown. To do so is to hold defendant liable for plaintiff's improvident contract. The measure of damages in case of fraud, it is true, is the amount which will compensate for all the detriment, whether anticipated or not, proximately caused by a breach of the obligation (sec. 3333, Civ. Code). The question here is is: What detriment was proximately caused by defendant's breach? The major portion of the loss suffered by plaintiff was clearly due to its own negligence in contracting to resell something which it was not in fact purchasing. Such loss, directly occasioned by the fact that plaintiff upon resale added to and changed materially,

representations as to the condition of the article, cannot be laid at defendant's door.

As is said in the case of *California P. Mfg. Co.* v. *Stafford P. Co.*, 192 Cal. 479, 483 [32 A. L. R. 114, 221 Pac. 345] : "It is a well-settled rule that the damages that can be recovered for any breach of contract are only such as may reasonably be supposed to have been in the contemplation of the parties at the time of entering into the agreement, as the probable result of a breach. 'Other damages are too remote . . . This rule does not mean that the parties should actually have contemplated the very consequence that occurred, but simply that the consequence for which compensation is sought must be such as the parties may be reasonably supposed in the light of all the facts known, or which should have been known to them, to have considered as likely to follow in the ordinary course of things from a breach, and, therefore, to have in effect stipulated against. The understanding and intention of the parties in this regard must of course be ascertained from the language of the contract, in the light of such facts.' (*Hunt Bros. Co.* v. *San Lorenzo Water Co.*, 150 Cal. 51, 56 [7 L. R. A. (N. S.) 913, 87 Pac. 1093, 1095].)"

The well recognized and generally approved rule is stated in the case of *Hadley* v. *Bdrendale,* 9 Ex. 341, 26 Eng. L. & Eq. 396 [156 Eng. Reprint, 145], as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as would fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from the breach of contract under these special circumstances so known and communicated."

█ It was certainly far beyond the contemplation of defendant, and perhaps of plaintiff also, that plaintiff would undertake to resell the boiler for almost twice its purchase value, upon a highly embellished and materially different description, and then replace it with a different type of boiler costing even more than that sum. The circumstances of the resale, therefore, offer no proof upon which a valid measure of damages may be based, as the loss arising therefrom would constitute damages too remote and not likely to follow in the ordinary course of things from the breach, and certainly no special circumstances were brought home to defendant sufficient to enlarge the rule of damages.

This holding emphasizes the absence of evidence in the record upon which to predicate a proper judgment for damages. Whether section 3313, 3314, or 3333 of the Civil Code is to measure the damages in this cause will depend upon the findings of fact on a retrial of the action.

The judgment is reversed.

Curtis, J., Shenk, J., Richards, J., and Seawell, J., concurred.

Rehearing denied.

Langdon, J., dissented.