[L. A. No. 9961. In Bank.—June 25, 1929.]

ROSEMEAD COMPANY (a Common Law Trust) et al., Respondents, v. SHIPLEY COMPANY (a Corporation) et al., Appellants.

Edward Judson Brown for Appellants.

Charles W. Fourl, Ingle Carpenter and Edward W. Tuttle for Respondents.

PRESTON, J.—The decree is affirmed. By it the plaintiff, Rosemead Company, a common law trust, is declared the owner of the property in suit. As incidental to this relief, the defendant Shipley Company, a corporation, is found to be the *alter ego* of its grantor, the defendant Don P. Jones, and is declared to hold the conveyance of said property as security only. The decree also declares the transaction resulting in the conveyance of said property as security to be usurious and the right to interest is thereby denied. An accounting is had between the parties and a reconveyance is directed upon payment of the true amount loaned and unpaid as found therein; also as further incidental relief, an agreement of compromise between the parties as to the division of the proceeds of a prospective sale is impeached and canceled for fraud and, as incidental to the last-named relief, a quitclaim deed, in furtherance of said agreement, of the property to' defendants by plaintiffs is canceled as is also a decree taken for the same purpose, quieting title to said property in the defendants. The decree is an apt illustration of the scope and efficacy of the powers of a court of equity.

The salient facts needful for the purposes of this discussion are: Plaintiffs, a common law trust and its trustees and beneficiaries, owned, subject to a trust in the Security Trust and Savings Bank of Los Angeles, a subdivision of land known as Rosemead Gardens. Desiring to promote activity in the sale of lots in this tract, plaintiffs conceived the idea of erecting on lot 1 and a portion of lot 2 thereof a store building. The court found the building site to have been at the inception of this transaction of the value of $4,500. Plaintiffs in this emergency sought the defendant Don P.

Jones, a presumed friend, and entered into with him an elaborate agreement in writing, intended doubtless to hide rather than to elucidate the true intent of the parties.

The writing bore date of January 22, 1923, but was executed in March following. It provided in substance that Jones should put up $1,866.67, the amount necessary to release the said site from the trust held by the bank, and should take a deed of conveyance of the property; that a brick store should be erected thereon at a cost not to exceed $9,600, which sum was to be obtained by a mortgage upon the property. Plaintiffs were to procure the builder, agree with him on the terms and were to supervise the construction without charge to Jones. This latter covenant Jones exacted by a special writing. Plaintiffs were to have one year after construction to repurchase the property and improvements for the sum of $3,000 and interest on $2,000 at the rate of seven per cent per annum from the date of the deed, the balance of $1,000 to draw no interest. Plaintiffs likewise were to secure tenants for the property, but Jones was to receive all rentals and was to apply them to the payment of the contemplated mortgage and interest, taxes, insurance and interest on the $2,000 to himself and to hold the remainder, if any, to be adjusted and accounted for at the time of the exercise of the option by plaintiffs to repurchase. It was further provided, however, that if said rentals were insufficient for all or any of these several purposes, plaintiffs would make such deficiency good. The contract further provided that if at any time during the coming five years the mortgage should be foreclosed and Jones should lose the amount advanced by him, or any part thereof, plaintiffs were to pay him the said deficiency with interest.

Jones put up the said sum and took a deed from the bank. A builder was procured by plaintiffs and the building started, but he proved unfaithful and the parties to this agreement got together and decided to finish the building by each putting up a portion of the sum required over and above the sum of $5,000 that had been raised by a mortgage on the property and had gone into the construction of the building. Under this new arrangement plaintiffs put up the sum of $2,200 and Jones put up the balance. The building was finished in the summer of 1923

and plaintiffs immediately secured tenants for it. Various rentals were from that time forward received by Jones.

The court below on this contract as construed by it, on the conduct of the parties with respect thereto, and on the oral testimony of plaintiffs and their witnesses, found this arrangement to be a loan and the conveyance to Jones a mortgage. This finding is so evidently correct that comment is unnecessary. It is a plain case of a loan of $1,866.67 and an agreement to pay a bonus of $1,133.33, besides lawful interest on the sum of $2,000. The disguise in which the transaction is clothed only emphasizes the fact that it is a loan and a loan at a grossly usurious rate of interest. Several writings of defendant Jones were introduced in evidence showing his exorbitant interest demands and demands for bonuses. One witness testified that Jones said he was getting twenty-eight per cent interest from others and would exact the same rate from plaintiffs.

It is true that within the one year provided for in said writing plaintiffs did not exercise the so-called option to repurchase nor to repay said defendant for the sums advanced by him, but this requirement, if material, was waived by the unsatisfactory statements of account given by Jones to plaintiffs and the above-mentioned other executed oral modifications of said contract made to finish said building. However, after the year had expired, Jones did render a statement of his account in which he claimed advances to the amount of $6,135.66, on which he demanded a bonus of $3,691.40, coloring the transaction, nevertheless, by the assertion that it was an offer to sell at such figures.

The court, after declaring the transaction a loan and after decreeing the agreement respecting interest to be usurious, stated the account between the parties and found that Jones had actually advanced over and above the rents received by him the true sum of $3,073.37. If it was proper to deny interest, no criticism of this item can be made.

But the story must be carried further—early in the proceedings, the defendant Jones and his wife deeded said property to defendant corporation, a concern in which they owned practically all the stock and of which Jones was the president and controlling spirit. It is not claimed, nor could it be claimed, that this corporation is in the position

of an innocent purchaser for value. On February 1, 1925, this corporation brought a suit against plaintiffs to quiet title to the property, which suit was answered by plaintiffs by the setting up of the transaction presumably as hereinabove outlined. A suit for the foreclosure of a mechanic's lien in the sum of $750 was also pending at this time. Plaintiffs, seeking to extricate themselves from this maze of difficulties, essayed to sell the property and to that end procured a *bona fide* purchaser who was willing to pay the sum of $17,000 for it and to go into escrow arrangements to this effect, which he did on his part by putting up the full proposed purchase price. Plaintiffs then sought out defendants and finally agreed with them in writing upon a division of this purchase price.

This agreement was in substance that defendants should deliver in escrow the necessary conveyance to pass title to the purchaser and accept the sum of $9,291.67, paying therefrom the sum of $1,441.67 and receiving a net amount to themselves of $7,850. The remainder was to be used in satisfying the mortgage on said property and the final balance was to go to plaintiffs. Fearing that the existence of litigation respecting the title might interfere with the sale, it was agreed that plaintiffs should facilitate matters by giving to defendants a quitclaim deed to said property and by stipulating that a decree might be entered in said suit to quiet title in favor of defendants and against themselves, all of which was done. But defendants failed and refused to execute and/or deliver the necessary deed in escrow or at all.

The court in this behalf found that defendants acted fraudulently in that their design was to procure said decree and said quitclaim deed without any intention on their part of ever executing the conveyance necessary to complete the sale. The evidence is amply sufficient to support this finding. Among other circumstances shown by the record, the real estate broker in the transaction testified that Jones "put his hand in his pocket like this and he says, 'I am sitting pretty; I am all right now; the property is mine.'"

The court in an admirably incisive manner sought and found the basis of the transaction, stripped it of the entanglement surrounding it and gave the clear-cut decree summarized above. Defendants have appealed and assigned

various technical grounds of error, which we shall now consider.

The court permitted, "over the objection of defendants," the filing at the opening of the trial of an amended complaint. A general objection of this kind is an insufficient claim of error. It is urged, however, that a new cause of action was introduced. This is not the case. Both complaints count upon the same state of facts; the difference is in the prayer for relief, the original prayer being for a money judgment and the amended prayer being for the equitable relief given. There is but one form of action in this state and a plaintiff may not be dismissed by the court merely because he is mistaken in the nature of the relief to which he is entitled. (*Zellner* v. *Wassman*, 184 Cal. 80, 88 [193 Pac. 84].)

A change by amendment from one kind of relief to another is not a change in the cause of action if the transaction is the same. (*Frost* v. *Witter*, 132 Cal. 421 [84 Am. St. Rep. 53, 64 Pac. 705]; *Doolittle* v. *McConnell*, 178 Cal. 697 [174 Pac. 305]; *Cox* v. *McLaughlin*, 76 Cal. 60 [9 Am. St. Rep. 164, 18 Pac. 100]; *Schaad* v. *Barceloux*, 42 Cal. App. 337 [183 Pac. 716]; *Ford* v. *Ford*, 44 Cal. App. 415 [186 Pac. 164].) The fact that the change is from legal to equitable relief is immaterial. (*J. I. Case T. M. Co.* v. *Copren Bros.*, 45 Cal. App. 159 [187 Pac. 772]; *Walsh* v. *McKeen*, 75 Cal. 519 [17 Pac. 673].) Nor does such change from the law to the equity side of the court bring about an election of remedies, if the change involves no prejudice to the opposing party. (*Roullard* v. *Rosenberg Bros. & Co.*, 193 Cal. 360, 366 [224 Pac. 449], and cases therein cited.) Here not only was no such objection made, but no showing of injury is attempted.

It is next urged that the complaint failed to state a cause of action because the compromise agreement, the quitclaim deed and the decree quieting title, all or either of them, constituted, if valid, a cancellation of all previous contracts and covenants and could not be canceled without an allegation of a previous notice of rescission and offer to restore as contemplated by section 1691 of the Civil Code. Certain exceptions to this general rule of the code have been specified in actions in equity. In *Kelley* v. *Owens*, 120 Cal. 502, 510, 511 [47 Pac. 369, 371], these exceptions are stated as follows:

"There are exceptional cases where restoration or an offer to restore before suit brought is not necessary, as, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties—and it will be found that such instances, or others similar to them in principle, are those to which the authorities cited by appellants generally relate. The substance of the distinction will be found to be based, not upon the form of the action, but upon the difference between the cases which are within the rule, and those which, owing to peculiar facts, are exceptions to the rule. And the real facts and rights arising thereon cannot be kept out of sight by the device of a particular form of action. Sections 3406–3408 of the Civil Code do not establish any new rule upon the subject."

These exceptions are approved and others added in *California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 739–741 [91 Pac. 593, 596], and the court there finally says: "Another exception recognized by this court is that of the case where the taking of an account is necessary for the ascertainment of the sum to be repaid, or the sum to be liquidated by an adjudication based on evidence of facts independent of the terms of the contract itself. In such a case, as the plaintiff cannot determine in advance of the suit the amount by him to be repaid, an offer to refund such sum as shall be decreed is a sufficient offer to do equity. (*Sutter St. R. R. Co.* v. *Baum*, 66 Cal. 44 [4 Pac. 916].) The authorities fully sustain the proposition that an offer to restore before action is not essential where the rights of the other party can be fully protected by the decree, and such restoration cannot be made without injuriously affecting the rights of the party seeking rescission, or the relative rights of the parties in the event of a rescission cannot be determined without an accounting. The statute itself dispenses with the

necessity of such an offer where the other party is himself unable to restore what he has received. In such event an offer on the part of the rescinding party would be a vain thing, and the respective rights of the parties can be fully guarded by the decree.''

Enough appears to conclusively show that a notice of rescission and offer to restore prior to suit was not necessary in this case, as the plaintiffs received absolutely nothing under any of the writings sought to be annulled. The institution of the suit or the allowance of the amendment was sufficient notice of rescission in a case such as this. (*Zeller* v. *Milligan,* 71 Cal. App. 617 [236 Pac. 349].) This is especially true in equity where fraud is the basis of the claim and no legal prejudice to the defendants could have resulted.

It is next urged that the transaction is at most but a resulting trust in which the defendants are trustees and error has resulted because the decree does not so declare and provide a time within which the amount due from plaintiffs must be paid and that failure to pay would work a forfeiture of plaintiffs' rights and thus obviate the possible necessity of a foreclosure proceeding. The transaction is not a mortgage, it is said, because conveyance to defendants was made by the bank and not by plaintiffs. This is not the test. It is quite possible for a transaction to be at one and the same time a mortgage and a resulting trust. (*Campbell* v. *Freeman,* 99 Cal. 546 [34 Pac. 113]; *Banta* v. *Wise,* 135 Cal. 277, 279 [67 Pac. 128]; *Windt* v. *Covert,* 152 Cal. 350, 353 [93 Pac. 67].) But so long as the transaction retains the features of a mortgage, foreclosure is ordinarily necessary even though the transaction may also give rise to a resulting trust. (*Byrne* v. *Hudson,* 127 Cal. 254 [59 Pac. 597]; *Windt* v. *Covert, supra; Lockhart* v. *McDougall Co.,* 190 Cal. 308 [212 Pac. 1]; *Campbell* v. *Freeman, supra.*) The fact that the deed was not made directly by plaintiffs but by the bank, which held the legal title, does not alone make the transaction a resulting trust instead of a mortgage. (*Prefumo* v. *Russell,* 148 Cal. 451 [83 Pac. 810]; *Lockhart* v. *McDougall Co., supra; Campbell* v. *Freeman, supra.*) Moreover, this feature of the present case seems unimportant as under the decree the plaintiffs may not have the relief they seek except upon payment of all sums due defendants.

█ It is also urged that the evidence does not support the finding that in queering the efforts of plaintiffs to sell the property by failure to co-operate with them by depositing a properly executed deed in escrow, defendants were acting fraudulently. This claim deserves little discussion. Repudiating the trust by conveying the property to defendant corporation and the institution of the suit to quiet title was acting fraudulently. Demanding exorbitant interest and bonuses in violation of the trust were acts of the same character. No sufficient reason whatever appears other than an intention to defraud for refusing to deposit the deed in escrow. In fact, the contention now made that the quitclaim deed and decree are and were binding notwithstanding their failure to comply with covenants on their part to make them binding is proof abundant that defendants were acting fraudulently.

█ The claim that the evidence is insufficient to justify the finding that the deed was a mortgage deserves no further discussion than is contained in the recital of facts. The same observation applies to the claim that usury was not present in the transaction and that it did not forfeit the right to interest. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805].) The defendants Jones and wife are in no position to claim error in directing them to join in the deed of reconveyance because they had theretofore deeded away their interest in said property to a corporation in their control. (*Jones* v. *Jones*, 140 Cal. 587, 591 [74 Pac. 143].)

Further discussion we deem unnecessary.

Curtis, J., Langdon, J., Richards, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.