[L. A. No. 12697. In Bank.—October 3, 1933.]

D. L. PETERS, Respondent, v. B. BINNARD et al., Appellants.

GUSSIE BINNARD, Appellant, v. D. L. PETERS, Respondent.

William Ellis Lady and H. C. Millsap for Appellants.

Tanner, Odell & Taft for Respondent.

THE COURT.—The above two cases, over the protests of appellants, were consolidated by the trial court and a single judgment rendered therein, from which judgment this

appeal has been taken. The facts developed at the time of the trial are as follows:

In the year 1928 one Louisa G. Wood was the owner of four promissory notes aggregating $24,200 secured by deeds of trust on certain pieces of real property, which notes had been executed by the Peters-Rhoades Company as maker. Peters, respondent in both actions, owned substantially all of the stock in this company.

On April 3, 1928, Mrs. Wood entered into a written contract with one of the appellants, B. Binnard, as evidenced by certain escrow instructions filed with the California Title Insurance Company, whereby she agreed to sell and B. Binnard agreed to buy these notes for the sum of $20,000. B. Binnard agreed to pay this sum within ten days after the completion of a certain trustee's sale then pending, and to pay interest in the event of a delay. This trustee's sale had nothing to do with the trust deeds and notes executed by the Peters-Rhoades Company.

On December 7, 1928, Mrs. Wood entered into a written contract with the El Merrie Del Corporation whereby she agreed to sell and the corporation agreed to buy the Peters-Rhoades Company notes for the total sum of $15,000, $2,500 in cash, and the balance in monthly installments of $1,000 each, starting January 7, 1929. Interest at the rate of seven per cent on the deferred installments was provided for. This agreement was expressly made subject to the B. Binnard-Wood agreement of April 3, 1928, it being provided that should B. Binnard complete his contract Mrs. Wood would pay to the El Merrie Del Corporation all sums in excess of the $15,000 provided for in the agreement of December 7, 1928. On December 10, 1928, the agreement of December 7, 1928, was slightly modified, but such modification did not affect the terms above set forth. It should be noted that respondent Peters is president and owns substantially all of the stock of the El Merrie Del Corporation. There is no dispute but that the El Merrie Del Corporation paid Mrs. Wood $2,500 on the execution of the above contract, and paid her an additional $1,000 on January 7, 1929.

The corporation defaulted in the payment of the $1,000 installment falling due February 7, 1929, but Mrs. Wood did not elect to then cancel the contract as she could have done. She continued to deal with the El Merrie Del Cor-

poration through Peters, and it was not until some time in May, 1929, that she attempted to cancel the contract. On February 26, 1929, the El Merrie Del Corporation assigned to Peters all of its interest in the agreement with Mrs. Wood.

All during this period B. Binnard and Peters were associated together in various business enterprises. Prior to February 26, 1929, Peters approached B. Binnard and asked him if he would not just as soon buy the Peters-Rhoades Company notes from him, Peters, for $20,000, as from Mrs. Wood. Binnard responded that he would if he could raise the cash, and that he would see what he could do. Binnard then reported back to Peters that he had been able to interest appellant National Thrift Corporation of America in the deal, and that that corporation had agreed to finance the transaction. The evidence clearly shows that the Thrift Corporation and Binnard entered into the deal as a joint enterprise, the Thrift Corporation agreeing to put up $12,500 and Binnard agreeing to advance the balance, both to share in the profits. Peters, B. Binnard and one Pingree, an employee of the Thrift Corporation, had various conversations, and finally worked out the terms of the deal as follows: B. Binnard and the Thrift Corporation agreed to pay Peters $20,000 for the notes in the following manner: $3,500 in cash to Peters (this sum was to refund to Peters the amount paid by the El Merrie Del Corporation to Mrs. Wood); $11,500 to Mrs. Wood ($2,000 in cash and $9,500 in monthly installments of $1,000 each); and Binnard agreed to cancel a $5,000 note which Peters had executed in favor of B. Binnard on September 28, 1928, and which note was then in default, having fallen due January 21, 1929. The Thrift Corporation and B. Binnard also agreed to waive any deficiency judgment against the Peters-Rhoades Company in the event of foreclosure. It is to be noted that the $2,000 cash payment to be made to Mrs. Wood was the amount necessary to pay the February 7, 1929, installment on the El Merrie Del Corporation-Wood contract, then in default, and the March 7, 1929, installment shortly to become due. The balance of $9,500, payable at the rate of $1,000 a month, was the balance called for and the rate of payment provided for in that contract. The $5,000 note which B. Binnard agreed to cancel is the note involved in

the second of the two actions, that is the action of Gussie Binnard v. Peters. Gussie Binnard is the wife of B. Binnard, and claims to be a holder in due course of the note.

All of the interested parties on February 26th–27th met at the office of the escrow officer of the California Title Insurance Company, Mr. Howland, to straighten out some of the details and to draw escrow instructions. The title company already had possession of the Peters-Rhoades Company notes upon the Binnard-Wood escrow. At first the parties intended to have Peters assign to B. Binnard and the Thrift Corporation his interest under the El Merrie Del Corporation contract, and thus to substitute these appellants for that corporation. Someone, possibly Mr. Howland, suggested a short-cut, whereby the contract was to be between Mrs. Wood on one side and Binnard and Thrift Corporation on the other. Under the contract as finally agreed to, the purchasers were to pay Mrs. Wood a total of $11,500, $2,000 in cash and $9,500 in installments, and were to pay Peters $3,500 in cash. B. Binnard also agreed to cancel the $5,000 note and to deliver the same to Peters outside the escrow. Everyone admits that it was also agreed that no deficiency judgment would be taken against the Peters-Rhoades Company on the notes. Although according to the first agreement no interest was to be paid to Mrs. Wood, the evidence on behalf of respondent shows that this was subsequently amended and that B. Binnard and the Thrift Corporation agreed to pay the interest to Mrs. Wood if she demanded the same. There can be no doubt that all of the parties to the agreement orally assented to all of the above terms before the escrow instructions were drawn. Peters secured escrow instructions from Mrs. Wood on March 2, 1929, which were deposited with the title company, and which called for the payment of interest. B. Binnard and the Thrift Corporation objected to the interest, but Peters pointed out to them that Mrs. Wood was entitled to interest under the El Merrie Del Corporation contract, and could not be expected to waive it. In a conversation with B. Binnard and Pingree on or about March 5th, Peters testified that these parties then agreed to pay the interest. Peters left on a business trip to New York, and while he was away B. Binnard and the Thrift Corporation conceived the idea of treating the transaction as a purchase of the notes from Mrs. Wood

alone, and leaving Peters out of the deal entirely, without paying him the $3,500 already advanced and without canceling the $5,000 note. They thereupon accepted Mrs. Wood's instructions of March 2d, which had been secured by Peters, and paid her the amounts called for by those instructions, and refused to have any further dealings with Peters. It should be mentioned that B. Binnard and the Thrift Corporation paid all installments called for by the March 2d instructions until at the time of trial only $2,500 remained to be paid to Mrs. Wood. Some time in May, 1929, Mrs. Wood, at whose instigation it does not appear, purported to cancel the El Merrie Del Corporation contract, but this was not done until some time after B. Binnard and the Thrift Corporation had accepted all the benefits of the contract which Peters had worked out.

On this state of facts the trial court held that a contract existed between Peters and B. Binnard and the Thrift Corporation, and that the latter two had breached the same. The court granted judgment against these two appellants for the $3,500 and interest; ordered the cancellation of the $5,000 note; and held that the Peters-Rhoades Company notes were held by these two appellants without recourse against the maker. The court also held the $5,000 note had been assigned to Gussie Binnard after maturity, in bad faith. Her rights to this note will be hereafter discussed. It is to be noted that this judgment is in exact accord with the agreement between the parties, and simply compels B. Binnard and the Thrift Corporation to live up to the contract entered into by them with Peters. From this judgment B. Binnard, the Thrift Corporation and Gussie Binnard have appealed.

Originally there were two separate actions filed by the parties herein. The first action, hereafter referred to as the Peters case, was brought by Peters against B. Binnard and the Thrift Corporation for breach of contract. The second action, hereafter referred to as the Binnard case, was brought by Gussie Binnard against Peters to collect the amount due on the $5,000 note, she claiming to be a holder in due course thereof.

The Peters case was filed May 20, 1929. This action went to trial on the issues framed by a second amended complaint and the answer thereto. This complaint alleged the facts

substantially as set forth above, except that it was therein alleged that the agreement between Peters and B. Binnard and the Thrift Corporation was to sell and buy respectively the rights of Peters in the El Merrie Del Corporation contract with Mrs. Wood. It is alleged that plaintiff has fully performed and that defendants have not. The prayer was for $8,646 damages, that amount including the $3,500 paid by Peters to Mrs. Wood, and $5,000 damages with interest for failing to cancel the note. The defendants in the Peters case, after their demurrers had been overruled, answered the second amended complaint, denying the allegations thereof and affirmatively alleging that the $5,000 note involved was the property of Gussie Binnard. Before trial these defendants filed an amendment to their answer, alleging that if any contract had existed between the parties it had been rescinded.

The complaint in the Binnard case was filed in June, 1929, and alleges the execution of the $5,000 note, setting it forth *in haec verba*. The note shows on its face that it was payable to B. Binnard. It is alleged that he was merely acting as trustee for his wife, plaintiff in this action. The complaint also alleges that the note was assigned by B. Binnard to Gussie Binnard. Peters denied the allegations of this complaint and alleged that the note had been paid.

Both actions came on for trial in November, 1929. At the outset it was stipulated that the two cases should be tried together, and that the evidence received in one, so far as pertinent, should be admitted as being evidence in the other. At the conclusion of the plaintiff's evidence in the Peters case, defendants therein moved for a nonsuit, which motion was denied. Defendants then introduced their evidence and the cases were submitted. While the cases were under submission the trial court made an order that Peters should have leave to file a third amended complaint to conform to the proof in the Peters case, and further ordered that the two cases should be consolidated under the number of the Peters case. Pursuant to the permission thus granted, Peters filed his third amended complaint. The complaint alleges the facts substantially as set forth in the second amended complaint, except that the real contract as disclosed by the evidence already introduced is here alleged, namely, that Peters agreed to relinquish his rights under

the El Merrie Del Corporation-Wood contract, and to procure Mrs. Wood's consent to enter into a contract with B. Binnard and the Thrift Corporation to sell them the Peters-Rhoades Company notes for $11,500, and that in consideration therefor Peters was to receive $3,500, B. Binnard was to cancel the $5,000 note, and a waiver of personal liability on the part of the Peters-Rhoades Company to be executed. The plaintiff alleged the fairness of the contract and closed with a prayer for the relief granted by the trial court. After the filing of this complaint the defendants therein named moved to vacate the order permitting the filing of the third amended complaint, and moved to strike it out. They likewise demurred to the complaint and moved to vacate the order consolidating the two cases. The motions were denied and the demurrer overruled, and the defendants answered denying the allegations of the complaint. Later the trial court set aside the order of submission, and ordered the taking of further evidence. Defendants strenuously objected to the taking of further evidence, but their objections were overruled, and further evidence, both oral and documentary, was introduced by all the parties. Later the judgment above outlined was rendered. Subsequently appellants unsuccessfully sought to disqualify the trial judge from passing on the motion for a new trial on the ground of bias and prejudice. After the denial of the motion for a new trial this appeal was perfected.

Most of appellants' contentions are highly technical and all of them are without merit. ■ It is contended that the trial court erred in its order authorizing the filing of the third amended complaint. This contention is largely based on the apparent change of remedies found in the third amended complaint, and on the ground that new issues were brought in by this complaint. Appellants point out that the second amended complaint in the Peters case had asked for $5,000 damages for failure to cancel the note, while the third amended complaint prayed for the cancellation of the note or damages. It should be noted that when this last complaint was filed the Binnard case had been consolidated with the Peters case, and that in the former case the issue as to payment of the note was involved. ■ It is, of course, elementary that the allowance or refusal of the trial court of permission to file amendments to pleadings

to make them conform with the proof is a matter largely in the discretion of the trial court, and its exercise ordinarily will not be disturbed in the absence of gross abuse. (*Armstrong* v. *Lassen Lumber & Box Co.*, 204 Cal. 529 [269 Pac. 453].) The third amended complaint did not bring in any new cause of action. A change by amendment from one kind of relief to another is not a change in the cause of action if the transaction is the same. (*Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 Pac. 1038].) Other than the change in remedy, the only new matter inserted in the third amended complaint was the change in the nature of the contract between Peters and the appellants, and that had been fully developed on the trial. Moreover, just how appellants were injured by permitting the new complaint to be filed does not satisfactorily appear. Assuming that new issues were thus introduced into the case, the trial court, after the new complaint had been filed and appellants had answered, permitted the taking of further evidence, and both sides introduced further evidence at some length. Appellants, therefore, had ample opportunity to present their evidence on any of these issues.

Appellants also complain of the order consolidating the actions. There was no error in ordering the two cases consolidated. Section 1048 of the Code of Civil Procedure, as amended in 1927, confers on the trial court, in its discretion, power to sever or consolidate actions "whenever it can be done without prejudice to a substantial right". Appellants complain that the rights of Mrs. Binnard were substantially affected by the consolidation, but this contention is without merit. One of the issues involved in the Binnard case was whether Mrs. Binnard was a holder in due course of the Peters note. If she were not, then the same evidence that proved that Peters was entitled to a cancellation of the note in the Peters case proved that the note had been paid in the Binnard case. If she were a holder in due course then none of that evidence affected her.

Appellants likewise complain of the action of the trial court in setting aside the submission of the causes, and taking further evidence after the cases had been consolidated. While the action of the trial court may have been unusual, it certainly expedited and furthered a complete

hearing on the merits in the trial court, and for that reason was not error.

■ Appellants also contend that their demurrer to the third amended complaint should have been sustained. This contention is largely based on the theory that this complaint was for specific performance, and that the allegations contained therein are not sufficient to grant that relief. Some objection also seems to be made to the joining of a request for relief addressed to the law side of the court with a request for equitable relief. Under our system of code pleading it is elementary that a plaintiff may blend with an action at law a petition for ancillary equitable relief. It is also quite clear that where a party is entitled to legal and equitable relief the whole matter should be litigated and finally settled in the same action. We are of the opinion that the facts of this case clearly warranted the granting of both legal and equitable relief. Appellants' objections to the sufficiency of the pleading in alleging the fairness of the contract are without merit. This point was in issue in the trial court, and on adequate evidence it has found in favor of Peters. ■ Moreover, assuming the allegation as to adequacy of the consideration was not sufficient, it was well settled that where the consideration agreed on in a contract has been accepted, the acceptance constitutes a waiver of any claim of inadequacy. (*Fleishman* v. *Woods,* 135 Cal. 256 [67 Pac. 276] ; *Nicholson* v. *Tarpey,* 70 Cal. 608 [12 Pac. 778].) The evidence shows that all that appellants desired was to purchase the Peters-Rhoades Company notes. Through the efforts of Peters they have purchased these notes on terms negotiated by Peters. Appellants have enjoyed the benefits of the efforts of Peters in obtaining the notes at the agreed price, but simply refuse to pay Peters the $3,500 advanced by him, or to cancel the $5,000 note. Even if this were an action for specific performance, appellants are in no position to urge the inadequacy of the consideration.

■ Appellants also attack some of the findings as being unsupported by the evidence. In so far as these findings particularly relate to the issues raised in the Peters case they find ample support in the evidence above summarized. We think, as above set forth, that the evidence amply shows that the parties came to a definite agreement, and that

Peters has performed and appellants have not. Appellants contend that Peters did not perform because Mrs. Wood canceled the El Merrie Del Corporation contract some time in May, 1929. The evidence shows that through the efforts of Peters, Mrs. Wood, on March 2, 1929, deposited her escrow instructions agreeing to sell the notes to B. Binnard and the Thrift Corporation for $11,500. This offer was approved and accepted by appellants, and in fact some time in March, 1929, appellants paid Mrs. Wood the first $2,000 called for by the contract, and also paid her the May installment. It was not until after all this was done that Mrs. Wood attempted to rescind the El Merrie Del Corporation contract. This attempted rescission did not affect the true contract between Peters and appellants, which was to secure Mrs. Wood's consent to a direct sale to appellants of the notes. This was all done long before the purported cancellation by Mrs. Wood.

The only other point necessary to discuss is the sufficiency of the evidence to support the findings particularly applicable to the Binnard case. The trial court found that the note upon which this action was predicated had been assigned and transferred to Gussie Binnard after maturity and without consideration and in bad faith. The facts warranted this finding. It appears that this note was in effect a renewal note of a former note in the same amount, payable to the order of Pingree. Although Pingree and the Binnards testified that the $5,000, which was advanced to Peters by Pingree and which advance was evidenced by the note, had come from the funds of Mrs. Binnard, the fact also appears that Pingree assigned this note to Mr. Binnard. Some time after the execution of the Pingree note, Peters paid by check $327.64 interest on the note, and paid the same to Mr. Binnard in the presence of Mrs. Binnard. Mr. Binnard signed a receipt for the interest. Subsequently the note which is the subject of this action was executed by Peters, and Mr. Binnard was made payee. There is an undated assignment on the back of this note by Mr. Binnard to Mrs. Binnard. The two Binnards testified that this assignment was made before maturity, but this testimony is in conflict with statements made by Mr. Binnard before these actions arose. Mr. Sargent, one of the attorneys for Peters, testified that in the conversations had with Binnard

and Pingree on February 26–27 1929 (after the maturity date of the Peters' note) he asked B. Binnard the direct questions as to whether he then owned the Peters' note and whether it had been assigned, and that Binnard replied that he then owned the note and it had not been assigned. This is directly contrary to the testimony of the Binnards at the time of trial. Moreover, Mrs. Binnard first testified that the note at all times was in her safety deposit box and that her husband did not have access thereto. Later the bank records were introduced showing that early in 1927, long before the present controversy, Gussie Binnard received two keys to the box in question and specifically authorized the bank to permit Mr. Binnard to have access to the box. Mrs. Binnard also testified that she authorized her husband to surrender the Pingree note and accept the new note. The trial judge had the opportunity of seeing these witnesses and observing their demeanor on the witness-stand. He chose to disbelieve the testimony given by the Binnards at the time of trial, and to believe Mr. Binnard's statements made before trial. Such a determination rests peculiarly within the province of the trial judge. We are clearly of the opinion that the findings applicable to the Binnard case find substantial support in the record, and cannot, for that reason, be disturbed.

The other contentions of appellants are so unsubstantial as not to require comment.

For the foregoing reasons the judgment appealed from is affirmed.

Rehearing denied.