[Civ. No. 8934. First Appellate District, Division One.—October 30, 1933.]

MARION REIDY, Respondent, v. ALICE M. O. COLLINS et al., Defendants; MARY BRANTZEL ROSE, Appellant.

O. C. Sattinger, J. W. Kearby and Frank M. Gunter for Appellant.

William Ellis Lady for Respondent.

THE COURT.—Plaintiff brought this action to quiet the title to two parcels of real property in Los Angeles County, one referred to in the briefs as the St. Andrews property, and the other as the Rampart property. Situated on the Rampart property was an apartment house, in which certain furniture and fixtures, bought under a conditional sale contract, were installed by defendant Collins. On or about April 6, 1928, defendant Rose and her husband, who is now deceased, were the owners of the Rampart property. About that date the same was sold to defendant Collins, who placed three encumbrances thereon. The first and second were deeds of trust to the Guardian Investment Co. to secure loans of $25,000 and $10,000 respectively; the third was a deed of trust to defendant Rose and her husband to secure the payment on April 6, 1929, of a note for $12,800, which represented the balance of the selling price of the property. Defendant Rose succeeded to her husband's interest in these instruments. Default occurred in the payment of interest due on the second encumbrance on August 16, 1928, and a notice of default was recorded by the investment company on November 19, 1928. On the same date Mrs. Collins conveyed to her sister by deed of gift the St. Andrews property and other parcels, not including the Rampart property. On November 19, 1928, she entered into an agreement with plaintiff and P. M. Reidy, by which these two agreed, in consideration of the transfer to them of the St. Andrews property, to reconvey the same to Mrs. Collins within one year from date, together with the Ram-

part property, for $15,400 plus all moneys advanced by them, including costs, taxes, interest and other charges, but subject to the first lien on the Rampart property. It was further agreed that if the Reidys could not acquire title to the Rampart property within said period they would reconvey the St. Andrews property to Mrs. Collins without consideration. This agreement was acknowledged by the latter and recorded on November 27, 1928.

As stated, there had been a default in the payment of interest on the second encumbrance on the Rampart property; and it was the understanding between the parties that the Reidys should purchase this encumbrance and continue the foreclosure proceedings and bid in the property at the trustee's sale. In the meantime Mrs. Collins had procured a reconveyance of the St. Andrews property from her sister, and reconveyed the same to Mrs. Reidy pursuant to the agreement.

The Reidys purchased said second encumbrance for $7,500, and on March 23, 1929, the property was sold pursuant to the trust deed and purchased in the name of plaintiff for $5,000. The effect of this sale so far as plaintiff was concerned was to destroy the security of the deed of trust held by defendant Rose. (*Ferry* v. *Fisk*, 54 Cal. App. 763 [202 Pac. 964].)

On March 27, 1929, defendant Rose brought suit on the note held by her, no part of which had been paid. An attachment issued and was levied on Mrs. Collins' interest in the St. Andrews property and upon another parcel not involved in this action. Judgment was entered on March 15, 1930, and an abstract of the same recorded in Los Angeles County.

Defendant Rose filed an answer to plaintiff's complaint in the present action, together with a cross-complaint, alleging the insolvency of Mrs. Collins, that the conveyance to plaintiff was without consideration, and that the purpose and intention of the transaction described was to defraud cross-complainant and delay and hinder the collection of her judgment. She asked a decree adjudging her judgment to be a lien on the property prior to any claims of the other parties to the suit. At the conclusion of the trial plaintiff was permitted to amend her complaint to conform to the proof. Under this pleading she alleged with respect to the

transaction between herself and Mrs. Collins that the second encumbrance on the Rampart property being in default, it was the understanding that she should advance the sums necessary to acquire said encumbrance and cause the same to be foreclosed; further, that she should assume and pay the amount due on the furniture hereinbefore mentioned, and purchase such additional furniture as might be necessary to properly furnish the apartment house on the Rampart property, and that said sum should be repaid by Mrs. Collins without interest; that as security for repayment the St. Andrews property was conveyed to plaintiff, and that she also acquired title to the Rampart property by the foreclosure proceedings mentioned subject to the first encumbrance thereon; that the transaction was for the use and benefit of Mrs. Collins, and that pursuant thereto plaintiff paid out the sum of $21,326.01, but collected $8,884.92 as rents and profits from the properties, leaving a balance unpaid of $12,441.09, with interest thereon. This was alleged to constitute an equitable mortgage on the properties having priority over the Rose judgment, and a decree was asked accordingly.

The court found the allegations of the amended complaint to be true, and the allegations of fraudulent intent and want of consideration in the cross-complaint to be untrue. It was found, however, that Mrs. Collins, aside from the two parcels of real property described in the amended complaint, had insufficient property to satisfy the Rose judgment. A decree was entered adjudging the amounts claimed by plaintiff to be a first lien upon the property, that the same be sold, and that the proceeds, after deducting the expenses of sale, be first applied to the payment of the amount found to be due plaintiff with her costs, and the balance upon the Rose judgment, and that any overplus be paid to Mrs. Collins and another. It was also decreed that if the proceeds should prove insufficient to satisfy plaintiff's claim a deficiency judgment should be entered against Mrs. Collins.

Mrs. Rose, who has appealed from the judgment, contends that the findings against the allegations of fraud are unsupported, and that the court erred in permitting an amended complaint to be filed; also that the court erroneously took an accounting, and based its findings in that respect upon an affidavit filed by plaintiff.

Although the Reidys did not obligate themselves to acquire the Rampart property it was provided that if they did, then both properties should be held by them as security for the amounts paid out. However, contracts unilateral at first are sustained upon the execution of the optional consideration. (*Marin Water Co.* v. *Sausalito,* 168 Cal. 587 [143 Pac. 767].)

As respects the repayment of these sums by Mrs. Collins, while the contract refers to an option to require the Reidys to reconvey both properties to her, it also contains the provision that the St. Andrews property was conveyed to them as security for "the exercising of said option and that second party (Mrs. Collins) will exercise the within option".

It is not contended that the sale under the trust deed was invalid. Consequently appellant had not the right of redemption, and she alleged the loss of her security as a ground for the suit on the Collins note, wherein a personal judgment was recovered against the latter; nor, in the absence of the agreement in question, would Mrs. Collins have had further rights in the property. Contracts for extending the right of redemption where it exists, or for the purchase of an encumbrance upon property for the benefit of the debtor upon the sale thereof, are not invalid. In the latter case the transaction as between the debtor and the purchaser will be regarded as an equitable mortgage to the latter. (Jones on Mortgages, 8th ed., sec. 228, p. 268, and cases cited.) The transfer of the St. Andrews property, Mrs. Collins' promise to repay the amounts advanced by the Reidys, and the fact that the latter purchased the Rampart property, rendered the agreement enforceable; and the transfer and purchase being made as security for the performance of an obligation, the contract will be regarded in equity as an informal mortgage. (*Campbell* v. *Freeman,* 99 Cal. 546 [34 Pac. 113]; *Finnell* v. *Finnell,* 159 Cal. 535 [114 Pac. 820].) Such liens are enforceable not only against the original contractor, but his heirs, executors, administrators, voluntary assigns and purchasers and encumbrancers with notice. (*Title Ins. etc. Co.* v. *California Development Co.,* 171 Cal. 173 [152 Pac. 542].) As a rule they prevail over the liens of subsequent attachments and judgments. (*Handley* v. *Pfister,* 39 Cal. 283 [2 Am. Rep. 449]; *Matzen* v. *Schaeffer,*

720

65 Cal. 81 [3 Pac. 92]; *Bank of Ukiah* v. *Petaluma Sav. Bank,* 100 Cal. 590 [35 Pac. 170]; *Huff* v. *Sweetser,* 8 Cal. App. 689 [97 Pac. 705]; *Motor Acceptance Co.* v. *Finn,* 124 Cal. App. 766 [13 Pac. (2d) 761].)

Appellant contends that irrespective of this rule the contract was made with intent to hinder and defraud creditors, and that Mrs. Collins was insolvent when the same was executed. The court found, however, against the allegations of fraud and fraudulent intent.

The statute makes any transfer or encumbrance of property made or given voluntarily or without a valuable consideration by a party insolvent or in contemplation of insolvency fraudulent and void as to existing creditors, and the intent of the transferor is immaterial. (Civ. Code, sec. 3442; *Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947]; *Tobias* v. *Adams,* 201 Cal. 689 [258 Pac. 588].) Secret agreements which give the grantor the right to purchase have been held in some jurisdictions to be conclusively, and others presumptively, fraudulent. (27 Cor. Jur., Fraudulent Conveyances, sec. 358, p. 611.) Where the agreement is secret, and the grantee takes steps to obtain title at a sale by a sheriff, trustee or the like, the same rule applies. (27 Cor. Jur., Fraudulent Conveyances, sec. 360, p. 612.) Here the agreement was duly recorded, and in the absence of a fraudulent intent the validity of the transaction was not affected by the absolute form of the transfer though intended merely as security. (*Broughton* v. *Vasquez,* 73 Cal. 325 [11 Pac. 806, 14 Pac. 885].) So also a mortgage made in good faith to secure future advances is not fraudulent in law as against creditors of the mortgagor; nor does the fact that the total amount of such advances is not stated change the rule. (27 Cor. Jur., Fraudulent Conveyances, sec. 219, p. 531; *Bondurant* v. *Tally, etc.,* 191 Ky. 202 [229 S. W. 377]; *Alexandria Savings Institute* v. *Thomas,* 29 Gratt. (Va.) 483; *Tully* v. *Harloe,* 35 Cal. 302 [95 Am. Dec. 102]; *Wood* v. *Franks,* 67 Cal. 32 [7 Pac. 50]; *Tapia* v. *Demartini,* 77 Cal. 383 [19 Pac. 641, 11 Am. St. Rep. 288]; *Frank H. Buck Co.* v. *Buck,* 162 Cal. 300 [122 Pac. 466].) Nor is the validity of a transfer for a valuable consideration affected by the fact that it is made voluntarily and renders the debtor insolvent. (*Security Trust Co.* v. *Silverman,* 210 Cal. 578 [292 Pac. 636].) A loan or advancement of

money constitutes a valuable consideration (13 Cor. Jur., Contracts, sec. 155, p. 320); and when the Reidys acquired the note and deed of trust and purchased the Rampart property at the trustee's sale, this removed any objection to the validity and binding effect of the contract as respects either consideration or mutuality. (*Marin Water Co.* v. *Sausalito, supra.*)

Appellant claims that the testimony shows beyond reasonable question that the transaction was fraudulent, and that it was the intention to hinder, delay and defraud creditors. As is usual in cases of this character there were circumstances from which this conclusion might have been drawn. However, this was not the necessary effect of the evidence, and the court's findings to the contrary are not unsupported. Where this is true the findings cannot be disturbed on appeal (*Atkinson* v. *Western Development Syndicate,* 170 Cal. 503 [150 Pac. 360]), even where another finding could have been made on the issue. (*Ryder* v. *Bamberger,* 172 Cal. 791 [158 Pac. 753]; *Johnston* v. *De Bock,* 198 Cal. 177 [244 Pac. 330].) Nor is insolvency conclusive on the question of fraud as a fact. (*Hasenjeager* v. *Both,* 91 Cal. App. 394 [267 Pac. 146].)

Appellant cites numerous cases wherein the acts of transferors were held sufficient to support a finding of fraudulent intent. The circumstances in many of the cases cited were similar to the case at bar, but, as stated, there the trial court drew the inference of fraud, while here its conclusion was to the contrary.

Appellant further complains that after the case was submitted for decision the court allowed the filing of an amended complaint to conform to the proofs. While plaintiff in the first instance sought to quiet her alleged title to the property, as shown by the evidence she had but a lien thereon. The facts are similar to those in *Wilson* v. *Anderson,* 109 Cal. App. 467 [293 Pac. 627], where it was held that such an amendment was proper and that such judgment might be entered as the equities of the case required. As respects the theory of plaintiff's case the variance cannot reasonably be said to have misled appellant to her prejudice in maintaining her action or defense on the merits; and where this is true the court may allow a verdict to be found according to the evidence or may order an

immediate amendment without costs. (Code Civ. Proc., secs. 469, 470.) The allowance of such amendments is largely within the discretion of the trial court, and its action will not be disturbed in the absence of an abuse of discretion. (*Armstrong* v. *Lassen etc. Box Co.*, 204 Cal. 529 [269 Pac. 453].) See *Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 Pac. 1038].) As stated, the change in theory of plaintiff's complaint was not such as to prejudice appellant; but the amended complaint presented other matters. Upon these appellant claims that she was given no opportunity to be heard.

The amended complaint alleged the amounts which plaintiff claimed to have been advanced and the credits received; further, that certain payments were made upon the furniture mentioned. None of these issues was presented in the original complaint, although the record contains testimony referring thereto. In support of this portion of the amended complaint plaintiff, after the case was submitted, filed an affidavit setting forth a statement of her account covering these items, but otherwise no hearing was had or evidence taken.

Affidavits may not be used in evidence except where permitted by statute. (*Lacrabere* v. *Wise*, 141 Cal. 554, 556 [75 Pac. 185]; *Estate of Paulsen*, 35 Cal. App. 654, 656 [170 Pac. 855].)

In this connection the court found that as part of the agreement mentioned plaintiff agreed to pay the amounts due upon the furniture, and purchase such additional furnishings as might be necessary to operate the apartment house. However, the only clause in the agreement, which in any way tends to support that conclusion, is the provision that the two parcels of property should be reconveyed to Mrs. Collins upon payment of the amount mentioned "plus any and all moneys advanced by the parties of the first part for taxes, costs, interest or personal, as evidenced by promissory notes"; but, according to the testimony of plaintiff's husband, who arranged the deal, it was not the intention to provide in the contract for the payment of the furniture. Moreover, the question when the several advances were made was material to appellant, and she should have been given an opportunity to be heard thereon. Her judgment was entered and an abstract thereof was filed in March,

1930; and it appears to be well settled that where a mortgagee makes advances which it is optional with him to make his lien for such as are made after actual notice of a junior encumbrance will be postponed to that of the latter. And judgment liens are within the same rule. (17 Cal. Jur., Mortgages, sec. 184, p. 899; Jones on Mortgages, 8th ed., secs. 452, 453, p. 583; *Schmidt* v. *Hedden*, (N. J. Ch.) 38 Atl. 843; *Kramer* v. *Trustees, etc.*, 15 Ohio, 253, 260; *Ackerman* v. *Hunsicker*, 85 N. Y. 43 [39 Am. Rep. 621].)

The question of notice was not an issue under the original pleadings, nor does it appear to have been considered at the trial. The same is true of the other question mentioned although, as stated, evidence with respect thereto was adduced in another connection. We are satisfied that appellant's contentions were in these respects well founded, and that she was entitled to a further hearing before judgment was entered.

As to the other matters which have been considered the conclusions of the trial court are in accord both with the evidence and the law and should not be disturbed.

The judgment in so far as it affects appellant Mary Brantzel Rose (also known as Mary M. Rose) is accordingly reversed and the cause remanded for a determination of the amounts advanced by plaintiff, of the question of their priority over appellant's judgment, whether the payments, if any, on the purchase price of the furniture were a lien on the real property, or any portion thereof, and if so, whether such lien has priority over appellant's judgment.