[Civ. No. 18873. First Dist., Div. One. Feb. 27, 1961.]

HERBERT A. CROCKER et al., Plaintiffs and Appellants, v. F. LLOYD GRANDI, Defendant and Appellant.

Bert W. Levit, John B. Hook and Long & Levit for Plaintiffs and Appellants.

Wallace S. Myers and Robert P. Praetzel for Defendant and Appellant.

COAKLEY, J. pro tem.*—These are cross-appeals from portions of a judgment of the Superior Court of Marin County. Appellants Herbert A. Crocker, and Herbert A. Crocker and Co., whose interests are the same for the purposes of the appeal, will be referred to as "Crocker." Appellant F. Lloyd Grandi will be referred to as "Grandi."

Both appellants are experienced real estate subdividers,

*Assigned by Chairman of Judicial Council.

operating in Marin County. In 1951 Grandi was preparing a subdivision. He was unable to post the required improvement bond of approximately $45,000. Crocker did so under a written agreement which provided that in return for posting the bond Crocker would be entitled to an exclusive option to purchase (1) nine lots from among those numbered 9 to 22 at $4,500 per lot, (2) a single lot from the group identified as Lots Number 1, and (3) two lots just outside the subdivision. In addition, Crocker was given the right to select two other lots within the subdivision free and clear of encumbrances. Lastly, the agreement restricted the subdivision to particular types of improvements and provided that property subject to the agreement would not be rented or sold at prices less than those approved by Crocker. Sales by Grandi for resale were likewise subject to Crocker's approval as to minimum price. The purpose of these restrictions, as disclosed by the testimony, was to protect the value of the lots which Crocker was entitled to buy. Grandi defaulted and in 1954 a supplemental agreement was executed. Among other things it switched some of the lots subject to the agreement, released Grandi from liability for his failure to perform under the original contract, and extended his time to perform the original agreement, as modified by the supplemental agreement, until April 1, 1955.

In July, 1955, Crocker filed suit for damages for breach of contract. In May 1957, he filed an amendment to his second amended complaint in which for the first time he prayed for specific performance. The trial lasted eight days spread over a period of months, and the transcript contains 700 pages. Following the filing of extensive findings, judgment was entered which (a) directed specific performance by Grandi of his agreement to transfer certain lots to Crocker upon payment by Crocker of an amount specified, (b) directed Grandi to convey clear title to another lot upon payment of the option price of $4,500, and if unable to do so within two years, to pay Crocker $7,000 (the present value of the lot), plus interest on $2,500 from November 17, 1955, (c) awarded damages in an amount specified for Grandi's failure to convey certain other lots, and (d) directed that Grandi pay costs. Grandi moved for a new trial. The court filed an order granting new trial as to part of issues and denying new trial as to part of issues. Grandi appeals from all of the judgment except the portions with respect to which his motion for a new trial was granted. Crocker appeals from

the order granting a partial new trial, and from those portions of the judgment which denied him recovery for certain items of damages separate and apart from those items as to which he was allowed damages.

The factual maze created by the agreements and subsequent conduct of the parties, only a small part of which is summarized above, is such that it defies clear description in a few pages, much less paragraphs. Fortunately such detail is not necessary. The decision of the court below, and here, turns largely on questions of fact rather than law. Under the substantial evidence rule our task ends when we determine that there is substantial evidence to support the findings. (*Viner* v. *Untrecht* (1945), 26 Cal.2d 261 [158 P.2d 3]; *Key* v. *McCabe* (1960), 54 Cal.2d 736 [8 Cal.Rptr. 425, 356 P.2d 169].) The trial judge was meticulous and fair in his conduct of the trial, in his findings, and finally in granting a partial new trial. The evidence in support of the findings is substantial and the conclusions of law drawn therefrom are sound. Further discussion of the facts will therefore be limited to such as are necessary to an understanding of the rules of law stated herein. We will first consider Grandi's alleged grounds for a reversal of the judgment.

## GRANDI'S ALLEGATIONS OF ERROR

1. *That the complaint does not state a cause of action, and further, the amendment comes too late.*

There is no merit to either contention. The second amended complaint filed in February 1956, contains all of the allegations required, and more, to state a cause of action for specific performance to convey real property. Thus we find allegations (1) that the parties entered into a written agreement, (2) that the consideration which flowed from plaintiff to defendant was the subdivision bond, (3) that the defendant agreed to convey certain lots to plaintiff, describing them by lot numbers, (4) that the plaintiff exercised his option to purchase certain of the lots agreed to be conveyed, designating them, (5) that plaintiff has fully performed all of his obligations under the contract and at all times has been ready and able to pay the agreed prices for the lots, (6) that defendant owns the lots for which conveyances are sought, (7) that plaintiff has demanded performance, and (8) that the defendant refuses to convey.

True, the prayer was not amended to include specific performance until more than a year later, when such amend-

ment was made by leave of court. The case was tried on the theory of specific performance and damages in lieu thereof.

 As held in *Peters* v. *Binnard* (1933), 219 Cal. 141, 149, 150 [25 P.2d 834], ''A change by amendment from one kind of relief to another is not a change in the cause of action if the transaction is the same. . . . Moreover, assuming the allegation as to adequacy of the consideration was not sufficient, it was well settled that where the consideration agreed on in a contract has been accepted, the acceptance constitutes a waiver of any claim of inadequacy.''

 Independent however of any question of waiver, we hold that the basic consideration underlying the 1951 agreement was Crocker's liability of $45,000 on the bond, without which the subdivision would not have proceeded. Regardless of whether the price which Crocker agreed to pay for the option lots ($4,500 to $5,500 for each) was fair and adequate, as argued by Grandi, Crocker's large contingent liability on the bond, alone, under the facts of this case, constituted adequate consideration.

In the Peters case the amendment seeking specific performance was made on the court's order after the case was submitted for decision. While a delay of nearly three years should be avoided and condemned in the absence of good cause, Grandi suffered no surprise and no prejudice. Finally, having failed to raise the defense of laches before the trial court, Grandi is barred from raising it herein. (*Larkin* v. *Mullen* (1900), 128 Cal. 449 [60 P. 1091].)

2. *That Crocker did not exercise his option within the period provided in the agreement, and he did not tender the option price within a reasonable time thereafter.*

 This contention likewise lacks merit. The supplemental agreement provided that Crocker's options would terminate on July 31, 1955. It said nothing about the manner in which the option was to be exercised nor the time for payment. The original agreement was silent on the subject, other than the fact that Crocker was given an option. On July 28, 1955, Crocker served notice on Grandi that he thereby exercised his option as to certain lots. On July 29, 1955, he recorded a notice to the same effect. On November 17, 1955, Crocker tendered payment. The court found that Grandi had made no objection to the delay in Crocker's tender and the conclusions of law stated that any delay had been waived. There was substantial evidence to support the finding and

conclusion, including the history of past transactions between them, in which Crocker would notify Grandi that he wished to exercise his option, and he, Crocker, would thereafter pay the purchase price through the title company when notified by the latter that it was ready to record the deed. ██ ''Whether there has been a waiver is ordinarily a question of fact to be considered under all of the evidence.'' (*Leiter* v. *Handelsman* (1954), 125 Cal.App.2d 243, 248 [270 P.2d 563].) ██ Further, where an agreement fixes the time for exercising an option but does not fix the time for making payment, and notice of exercise of option is given within the time prescribed, a reasonable time thereafter is allowed the purchaser in which to tender payment. (*Cates* v. *McNeil* (1915), 169 Cal. 697 [147 P. 944]; *Murfee* v. *Porter* (1950), 96 Cal.App.2d 9 [214 P.2d 543]; see also Civ. Code, §§ 1491, 1496 and 1501.)

3. *That all persons having an interest in the lots have not been made parties to the suit.*

This objection is based upon the alleged fact that the lots are jointly held by Grandi and his wife as community property, and she has not been joined as a defendant. This objection was expressly withdrawn at the trial. There is therefore no excuse for raising it on appeal.

4. *That the court incorrectly applied Civil Code section 3300 rather than section 3306, as the measure of damages with respect to the option lots and the free lots which Grandi cannot convey.*

██ The court ordered Grandi to convey certain lots upon the payment by Crocker of the agreed option prices. With respect to those lots to which Grandi could not convey clear title, the court awarded Crocker the difference between the agreed option price and the value of the lots as of time of Grandi's breach, i.e., April 1955, as to some, and November 1955, to others. As to the lots which Crocker was to receive without charge in consideration of his posting bond for Grandi, the court awarded Crocker the value of those lots at the time of Grandi's breach.

Civil Code, section 3300, provides: ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in

the ordinary course of things, would be likely to result therefrom.''

Civil Code, section 3306, provides: ''The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.''

The court expressly found Grandi guilty of bad faith with respect to all the lots to which the above measure of damages was applied. The finding is abundantly supported by the evidence. Under the facts found it matters not therefore which of the two code sections the court applied. The result in dollars is the same, and total damages were correctly assessed.

Grandi's final contention concerning a release of liability as to Lot 13 does not merit discussion.

### CROCKER'S ALLEGATIONS OF ERROR AS TO HIS DAMAGES

*That the Court should have allowed Crocker damages for loss of profits occasioned by Grandi's breach.*

We disagree. The items of claimed damage involved (1) loss of profit on buildings which Crocker contends he would have built had Grandi conveyed the lots when demanded, (2) damages suffered by Crocker through Grandi's breach of the sales and rental price control agreement, and (3) damages for failure to extend one of the lots, as agreed in the supplemental contract of 1954. The findings and conclusions expressly state that Crocker suffered no damages by reason of such breaches. The court's reasoning appears to be based in large part on the 1954 supplemental agreement which granted ''a full release to Mr. Grandi for any expense, interest or other damage caused by his failure to perform to date any of his obligations under the terms of the [1951] Agreement . . .'' It appears also to be a case of Crocker's failure to sustain the burden of proof as to these issues of damages. The claimed damage was predicated primarily on Crocker's testimony as to what he would have done had Grandi performed, and as to his estimate of loss occasioned by Grandi's breach. For example, the record discloses that under questioning by the court, Crocker acknowledged that he

owned other lots in the area for several years preceding the trial and had not built upon them. The court appears not to have accepted Crocker's testimony on these issues. ██ "Provided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted." (*Hicks* v. *Reis* (1943), 21 Cal.2d 654, 659 [134 P.2d 788].) There was nothing arbitrary about the manner in which the trial judge handled any phase of this case. As noted earlier, he was fair and meticulous throughout.

*Crocker's allegations of error as to granting Grandi a new trial, as to two of the lots for which damages had been awarded.*

The new trial as to these lots was granted "on the grounds of insufficiency of the evidence to justify the judgments, and the said judgment is against the law." Crocker argues that the evidence was neither insufficient nor against the law, and although the trial judges have wide discretion in granting or denying new trials they must not act arbitrarily. ██ "One of the best known statements concerning the powers of appellate courts is that the granting or denial of a new trial is within the discretion of the trial judge, and his discretion will not be disturbed on review except on a showing of manifest and unmistakable abuse." (36 Cal.Jur.2d 398.) We see no reason to disturb the order.

The judgment and the order granting partial new trial are affirmed. Crocker shall be allowed costs of appeal.

Tobriner, Acting P. J., and Duniway, J., concurred.

Petitions for a rehearing were denied March 29, 1961, and the petition of defendant and appellant for a hearing by the Supreme Court was denied April 26, 1961.